[Civ. No. 26958. First Dist., Div. Three. June 24, 1971.]

GOVERNING BOARD OF NICASIO SCHOOL DISTRICT OF
MARIN COUNTY, Plaintiff and Respondent, v.
GARNET E. BRENNAN, Defendant and Appellant.

[Civ. No. 27201. First Dist., Div. Three. June 24, 1971.]

GARNET E. BRENNAN, Plaintiff and Appellant, v.
NICASIO SCHOOL DISTRICT et al., Defendants and Respondents.

(Consolidated Cases.)

■■■■■■■■■■

## COUNSEL

Levy & Van Bourg, Victor J. Van Bourg and Stewart Weinberg for Defendant and Appellant and for Plaintiff and Appellant.

Paul N. Halvonik and Charles C. Marson as Amici Curiae on behalf of Defendant and Appellant and Plaintiff and Appellant.

Douglas J. Maloney, County Counsel, and Richard V. Godino, Assistant County Counsel, for Plaintiff and Respondent and for Defendants and Respondents.

## OPINION

**CALDECOTT, J.**—On November 22, 1967, the respondent Governing Board of the Nicasio School District of Marin County, filed a complaint against appellant Garnet E. Brennan seeking her dismissal as a teacher employed by the school district. On June 17, 1968, appellant filed a petition for a writ of mandate, seeking an order compelling the school district to reemploy her for the 1968-1969 school year. The appeals are from a judgment in favor of the school district on the complaint and from a denial of the petition for a writ of mandate. The actions on the complaint and on the petition for writ of mandate were consolidated for trial and will be considered together on this appeal.

During the school year 1967-1968 appellant was a probationary certified employee of the Nicasio School District. On or about September 27, 1967, appellant made and executed an affidavit,[1] telling of her long and beneficial use of marijuana. She executed the affidavit to support another person's motion for an arrest of judgment. The other person had been convicted of

---

[1] In pertinent part, the affidavit reads: "Garnet Elizabeth Brennan, under penalty of perjury declares: That she is a friend of MELKON MELKONIAN, and is aware of the charges under which he was arrested, and the conviction under which he is awaiting sentence; that she makes this affidavit in support of the motion in arrest of judgment on the grounds of the unconstitutionality of the laws making the sale, possession or use of marijuana illegal:

Marijuana is not harmful to my knowledge, because I have been using it since 1949, almost daily, with only beneficial results. It has a relaxing effect when tenseness is present, my depth of perception has been increased, this carries over into times when I am not under the influence of marijuana.

Teaching children is my profession. I have been a teacher for thirty years and at present am the teaching principal of a public school. During school hours I never feel the need of using cannabis sativa, however, each recess is eagerly awaited

■■■■■■

the crimes of possession of marijuana and related offenses. The trial court specifically found that appellant believed she was performing a civic duty by executing this affidavit.

The affidavit immediately attracted publicity and the court found the pupils and students of appellant's school soon learned of its contents. On October 11, 1967, the Governing Board of the Nicasio School District adopted a resolution to suspend appellant. After appellant demanded a hearing, the district filed its complaint for her dismissal.

On March 14, 1968, while the trial on the complaint was still pending, the board of trustees of the school district served upon appellant a notice of a recommendation not to reemploy her for the school year 1968-1969. This recommendation was based on the identical grounds upon which the suspension had been founded.

■ Appellant contends that the term "immoral conduct" as applied in this case is unconstitutionally vague. As appellant has stated, the California Supreme Court, in *Morrison* v. *State Board of Education*, 1 Cal.3d 214, 220-221, footnote 9 [82 Cal.Rptr. 175, 461 P.2d 375], considered the term "immoral conduct" in the same light, whether it appears in Education Code section 13202[2] (as in *Morrison*), or section 13403 (as in the present case). In *Morrison* the court stated at pages 224-225: "Terms such as 'immoral or unprofessional conduct' or 'moral turpitude' stretch over so wide a range that they embrace an unlimited area of conduct. In using them the Legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval. Hence the courts have consistently related the terms to the issue of whether, when applied to the performance of the employee on the job, the employee has disqualified himself. [¶] In the instant case the terms denote immoral or unprofessional conduct or moral turpitude of the teacher which indicates unfitness to teach."

The Supreme Court in *Morrison* further defined immoral conduct, in quoting from *Jarvella* v. *Willoughby-Eastlake City School Dist.*, 12 Ohio Misc. 288, 41 Ohio Ops.2d 423 [233 N.E.2d 143]: " 'It [immoral con-

---

for smoking tobacco cigarettes. I do not consider marijuana a habit forming drug, but to me nicotine is.

I have been smoking one or two marijuana cigarettes every evening, sometimes more if school is not in session. Then, I stay up later at night.

I have known some people who have become momentarily nauseated, but neither I nor anyone I have ever known has had a 'hang-over' from its use.

Wherefore, affiant begs this court to set aside these unconstitutional laws depicting the plant cannabis sativa as a narcotic, addictive and harmful, and setting forth harsh and cruel penalties for its possession, sale or use.

dated [*sic*] at Forest Knolls, California; this 27th day of September, 1967."

[2]All statutory references are to the Education Code.

duct] must be considered in the context in which the Legislature considered it, as conduct which is hostile to the welfare of the general public; more specifically in this case, conduct which is hostile to the welfare of the school community. . . . In providing standards to guide school boards in placing restraints on conduct of teachers, the Legislature is concerned with the welfare of the school community. Its objective is the protection of students from corruption.' " In *School Dist. of Ft. Smith* v. *Maury,* 53 Ark. 471 [14 S.W. 669], quoted in *Morrison,* the court cautioned, " 'We do not mean to say that every act of immorality would be a breach of the contract to justify termination, but it would be such whenever, from the character or notoriety of the act, it impaired the services of the teacher in properly instructing or advancing the pupils.' "

Thus the term is not unconstitutional in itself, and if there is evidence of unfitness to teach, it is not unconstitutional as applied to this case. The trial court found in its finding of fact No. 7: "That the text of said affidavit and the face thereof is such that all reasonable persons having knowledge thereof would construe and believe it to be an admission by said Garnet E. Brennan that she had for many years used marijuana in defiance of and in violation of the laws of the State of California and that she considered this to be a moral and proper act. The text of said affidavit is not such as to indicate a mere advocacy of the change of the law but upon its face purports to be an admission of wilful violation of the law and a declaration of her belief that a violation of the law as written by authorized authority is appropriate and moral notwithstanding the fact that the same may constitute a commission of a felony." This finding is supported by the evidence. The appellant's affidavit states "I have been smoking one or two marijuana cigarettes every evening, sometimes more if school is not in session." Appellant further states she believes the laws making the sale, possession or use of marijuana illegal to be unconstitutional,[3] that marijuana is not harmful to her knowledge, and she has used it "with only beneficial results."

The affidavit received wide publicity not only locally in the press, radio and television, but nationally. Though it was not appellant's intention that the affidavit should receive this publicity, it certainly was reasonable to anticipate that this would happen, and that the children and their parents would learn of it.

No evidence was offered as to what effect this affidavit had on appellant's

---

[3]"Constitutional challenges of the marijuana legislation have been rejected. (See *People* v. *Glaser* (1965) 238 C.A.2d 819, 825, 48 C.R. 427 [claim that it is harmless]; *People* v. *Aguiar* (1968) 257 C.A.2d 597, 600, 65 C.R. 171 [claim that failure to punish possession of alcohol is discriminatory]; *People* v. *Oatis* (1968) 264 C.A.2d 324, 70 C.R. 524; . . ." (Witkin, Cal. Crimes, 1969 Supp., p. 225, § 701.)

students. Actually, the school board acted so promptly, after learning of the affidavit, that there was little time for any effect to develop. *Morrison* v. *State Board of Education, supra,* however, does not indicate that the student body must be examined to determine the effect of the incident on each student, or that any specific example of ill effect must be cited. This does not mean that this court or the trial court may speculate or conjecture as to the effect of the affidavit on the pupils. ■ There must be competent evidence of the deleterious effect on appellant's conduct on the students to support a finding of unfitness to teach.

■ Here there was competent evidence on the likely effect of appellant's conduct on the students. A witness for the board, a district superintendent of schools in Marin County, with 34 years experience as an educator, 26 years of which were spent as a classroom teacher, testified: ". . . the child is very apt to believe that that which the teacher does is correct, and, therefore, establish a pattern for his own life." The same witness also testified, "I would be inclined to believe that the pupil would be thinking 'If—if my teacher can gain her ends by breaking the law, then I, too, can gain my ends by breaking the law.'" ■ There was a conflict of evidence on this point (i.e., the effect on the students), but if there is substantial evidence to support the trial court's finding, the appellate court is bound by that finding. (See *Morrison, supra.*) ■ We believe the testimony of the district superintendent supplied this evidence.

Appellate has cited *Yakov* v. *Board of Medical Examiners,* 68 Cal. 2d 67 [64 Cal.Rptr. 785, 435 P.2d 553]. As stated in *Yakov,* and quoted in *Morrison* at page 222: ". . . in this proceeding the inquiry must be limited to the effect of Dr. Yakov's actions upon the quality of his service to his patients." The court further said ". . . we find no evidence of subjective intent other than to serve the best interests of his patients." Here the record does not show that appellant had the interests of her pupils in mind when she intentionally violated the law and made a public statement under oath of this violation, or that these acts were committed for the benefit of her pupils. Thus this case is distinguishable from *Yakov.*

■ Appellant contends that the signing of the affidavit was constitutionally protected free speech. ■ The right to dissent is inherent in the right of free speech. (See *Terminiello* v. *Chicago,* 337 U.S. 1 [93 L.Ed. 1131, 69 S.Ct. 894].) Moreover, the constitutional guarantee of free speech extends to the states. (See *Near* v. *Minnesota,* 283 U.S. 697 [75 L.Ed. 1357, 51 S.Ct. 625].) ■ Furthermore, the fact that appellant wished to express an opinion concerning a state law, and register her dissent, does not render her unfit to teach. A person can advocate the change of a law without violating the law. ■ The point in this case is that appellant has intentionally and knowingly violated the law, be-

cause she does not personally agree with that law, and then publicly declared this fact in such a way that it would reach and affect her pupils. It is not the affidavit which is the basis of this action against appellant.[4] The affidavit is merely evidence of appellant's competence or lack of competence to teach. To this extent the statement is not protected by the Constitution. (See *Pickering* v. *Board of Education,* 391 U.S. 563 [20 L.Ed. 2d 811, 88 S.Ct. 1731].)

■ Appellant contends that, since the school district had previously suspended her from employment, under section 13408, the district is barred from subsequently instituting proceedings under section 13443 to refuse to reemploy her. The district does not contest appellant's right to have review of the order denying the writ of mandate. ■ Certainly appellant did have a right to receive the requested writ if she presented cause to support her request. (See *California Federation of Teachers* v. *Oxnard Elementary Sch.,* 272 Cal.App.2d 514, 545 [77 Cal.Rptr. 497]; *Lunderville* v. *Emery Unified Sch. Dist.,* 262 Cal.App.2d 459, 466 [68 Cal.Rptr. 768].) The writ should have been granted if either (1) the district had no jurisdiction to institute the proceedings, or (2) there was no substantial evidence to support the hearing officer's determination of cause to refuse to reemploy appellant.

■ The district had jurisdiction to institute the proceedings not to reemploy appellant. This case is very similar to *Lunderville* v. *Emery Unified Sch. Dist., supra.* In this case appellant was merely suspended since she had demanded a hearing. She actually remained in a contractual relationship with the district until the trial court found there had been grounds to suspend her, and that finding occurred only after the district had made the determination not to reemploy her.

Section 13443 provides the decision not to reemploy a teacher "shall be for cause only." The "cause" given for the decision here was essentially the same as that given to originally suspend appellant, which we have found to be adequate.

The judgments are affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied July 23, 1971, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1971. Peters, J., was of the opinion that the petition should be granted.

---

[4]In fact, one Jeff Pflugrath, a teacher at appellant's school, also filed an affidavit in the same criminal case as did appellant. In his affidavit he also advocated a change in the laws regulating marijuana, and stated he felt the present laws were unconstitutional. He did not say he ever used marijuana. The board took no action against Mr. Pflugrath because of his affidavit, and when appellant was removed from her position he was promoted by the board to replace her.