[Civ. No. 29298. First Dist., Div. Four. Jan. 26, 1972.]

ARTHUR TILLEARD COMINGS, Plaintiff and Appellant, v. STATE BOARD OF EDUCATION, Defendant and Respondent.

[Civ. No. 29573. First Dist., Div. Four. Jan. 26, 1972.]

JEFFERSON UNION HIGH SCHOOL DISTRICT, Plaintiff and Respondent, v. SELWYN JONES, Defendant and Appellant.

(Consolidated Appeals.)

**COUNSEL**

Paul N. Halvonik, Robert G. Parker, Charles C. Marson and John Kaplan for Plaintiff and Appellant in No. 29298.

Levy & Van Bourg, Stewart Weinberg and Victor J. Van Bourg for Defendant and Appellant in No. 29573.

Evelle J. Younger, Attorney General, Richard L. Mayers, Thomas E. Warriner and Blanche C. Bersch, Deputy Attorneys General, for Defendant and Respondent in No. 29298.

Keith C. Sorenson, District Attorney, and Jerome F. Coleman, Deputy District Attorney, for Plaintiff and Respondent in No. 29573.

**OPINION**

**RATTIGAN, J.**—Although these appeals have reached us from different procedural sequences, we consider them together because of the questions

common to both: whether, and upon what evidence, a public school teacher may be subjected to administrative penalties after he has been arrested and convicted upon a charge of possession of marijuana.

### The Comings Appeal (1 Civil 29298): Facts

For several years prior to 1969, appellant Arthur Tilleard Comings held certain certification documents issued by respondent State Board of Education (hereinafter the board) pursuant to the Education Code and to title V of the California Administrative Code. The documents included a general elementary teaching credential which authorized Comings to serve as a teacher in any public elementary school, or in grades 7 or 8 of any junior high school, in California. An accusation was filed with the board on August 21, 1968, alleging that Comings had been in possession of marijuana in San Diego on February 23, 1967; that he had consequently been arrested and convicted on a charge of violating Health and Safety Code section 11530; and that his cerification documents should be revoked because he had thereby committed "acts involving immoral and unprofessional conduct," "acts demonstrating his unfitness for service," and "an act or acts involving moral turpitude."

Comings demanded and received an administrative hearing, which was conducted pursuant to the Administrative Procedure Act. (Ed. Code, § 13203; Gov. Code, § 11500 et seq.) He appeared at the hearing through counsel only. No testimony was presented at the hearing, but opposing counsel (1) stipulated to the introduction of the evidence received at Comings' preliminary examination on the marijuana charge,[1] and of the minute-order record of his plea of guilty thereto in the Superior Court of San Diego County; and (2) stipulated that he was subsequently convicted on the charge in that court, and was granted probation.[2] None of the foregoing evidence was disputed, nor is it disputed on Comings' appeal: no other evidence was received at the hearing.

The hearing officer proposed, and the board adopted, a decision revoking Comings' certification documents pursuant to Education Code sections

---

[1]According to the transcript of the preliminary examination, Comings was arrested on February 23, 1967, at a Mexican border station in San Diego, after various quantities of marijuana and related debris were found in police searches of his automobile and of his person. The evidence was directed only to his possession of the marijuana; none of it indicated that he used it or admitted using it.

[2]The record shows that Comings entered his guilty plea in May 1967, but neither it nor counsel's stipulation indicates the date he was granted probation. As the record suggests that the probation officer's report was returnable to the San Diego court in June 1967, we infer that Comings was granted probation in that month.

13202 and 13129,[3] which were cited in the decision. Comings thereupon sought a writ of mandate, in the Superior Court of the City and County of San Francisco, to compel the board to set aside its decision and to reinstate his certification documents. The cause was apparently submitted on the pleadings and the administrative record, without the introduction of any evidence. The superior court denied Comings' petition by minute order,[4] from which he appeals.

## The Jones Appeal (1 Civil 29573): Facts

In and prior to 1969, appellant Selwyn Jones was a permanent, certificated employee of respondent Jefferson Union High School District, and taught in the art department of Westmoor High School in Daly City, San Mateo County. On August 22, 1969, while visiting Hawaii, Jones was arrested and charged with possession of marijuana in violation of the laws of that state. Pursuant to his plea of *nolo contendere*, he was thereafter convicted as charged, and granted probation and fined, in the Circuit Court of the Fifth District of Hawaii.

After Jones' return to Westmoor High School in the fall of 1969, respondent school district's superintendent filed, with respondent district's

---

[3]As pertinent, Education Code section 13202 provides that the State Board of Education "shall revoke or suspend" certification documents "for immoral or unprofessional conduct, . . . or for any cause which would have warranted the denial of an application for a certification document or the renewal thereof, or for evident unfitness for service, . . ." Section 13129 permits denial or renewal of a certification document for commission of "any act involving moral turpitude." (*Id.*, subd. (e).)

The board's decision included findings that Comings had been in possession of marijuana, and had been arrested and convicted thereof, as alleged in the accusation. Its full content, however, indicates that his certification documents were revoked upon the theory that the possession alone constituted "immoral or unprofessional conduct," (Ed. Code, § 13202), an "act involving moral turpitude" (*id.*, § 13129, subd. (e)) and "evident unfitness for service" (*id.*, § 13202): i.e., that his conviction was considered as evidence of his conduct, but not as a ground for revocation in itself. This reading of the decision is consistent with the facts (1) that conviction of a marijuana offense is not a ground for permissive revocation of certification documents under Education Code sections 13202 and 13129, and (2) that a violation of Health and Safety Code section 11530 is not a "narcotics offense" of which conviction is a ground for mandatory revocation. (See Ed. Code, §§ 13130, subd. (c), 12912.5, subds. (a), (b).)

[4]The superior court made no findings of fact, which were presumably waived. (Code Civ. Proc., § 632, subd. 1.) We may therefore infer that the court found substantial evidence, in the administrative record, that Comings was in possession of marijuana on February 23, 1967, in San Diego, and that this constituted "immoral or unprofessional conduct" (Ed. Code, § 13202), an "act involving moral turpitude" (*id.*, § 13129, subd. (e)), and "evident unfitness for service." (*Id.*, § 13202.) We infer such findings in support of the judgment. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 310, p. 3118.)

governing board and pursuant to Education Code section 13404, a written statement of charges against him.[5]

The board commenced administrative proceedings directed to Jones' immediate suspension and dismissal. (Ed. Code, § 13408 et seq.) When he demanded a hearing, the board by resolution authorized the San Mateo County District Attorney to file an action for Jones' dismissal. (*Id.,* § 13412, subd. (b).) The district attorney commenced such action in the Superior Court of San Mateo County on November 10, 1969, alleging the above-recited sequence in the "Complaint for Dismissal." Jones having answered the complaint, the cause was tried before the court sitting without a jury. As plaintiff at the trial, respondent school district introduced testimony by Dennis Higashi and Margaret Riggs. Higashi, an officer in the police department of the County of Kauai, Hawaii, testified to the circumstances surrounding Jones' arrest, in which he (Higashi) had participated.[6]

Miss Margaret Riggs, vice-principal at Westmoor High School, testified as follows:[7] Jones' return to the school as a teacher would adversely

[5]The charges were "1. Immoral conduct. 2. Conviction of a crime equal to a violation of Section 11530 of the Health & Safety Code. 3. Dishonesty. 4. Evident unfitness for service. 5. Conviction of a crime involving a moral [sic] turpitude."

In the statement, the superintendent further alleged as follows: "The above listed charges are based specifically upon the following incidents:

"1. On or about the 22nd day of August, 1969, respondent [Jones] was convicted of the crime of unlawful possession or control of marijuana by the Circuit Court of the Fifth Circuit of the State of Hawaii.

"2. The undersigned . . . charges that the possession of the above described narcotics would constitute a violation of the laws of the State of California and that accordingly respondent [Jones] has been found guilty of a charge equal to a violation of Section 11530 of the Health and Safety Code. Respondent [Jones] wilfully and intentionally failed to make a full disclosure of said conviction prohibited [sic] his performing duties as a teacher. In this respect, the undersigned believes said respondent [Jones] was dishonest.

"3. . . . [R]espondent [Jones] has engaged and there is a risk that he will continue to engage in the illegal consumption of narcotics and is accordingly unfit to continue his services as a teacher of the children of the District.

"4. . . . [T]he conviction of the crime above set forth constitutes the conviction of a crime involving moral turpitude.

". . . [T]he above described acts and conduct on the part of said respondent [Jones] constitute reasonable cause of his immediate suspension without pay and for his dismissal as provided in Sections 13403 et seq. of the Education Code."

[6]Officer Higashi's testimony in this regard was as follows: He and other officers went to Jones' hotel room with a search warrant. They served it upon Jones (who was present with another person), conducted a search of the room, and found two sacks containing marijuana cigarettes. After having been advised of his rights, Jones admitted ownership of one of the sacks, and told the officers "We smoke pot, but only a little bit."

[7]Although Miss Riggs' opinion testimony concerning Jones was admitted over continuing objection by his trial counsel, he challenges none of the trial court's evidentiary rulings in this regard.

affect its art department, its faculty at large, its student body generally, and the students' parents, because many of the persons involved had expressed "disapproval" or "concern" at the prospect of having a teacher on the campus who had been convicted of using marijuana or who had admitted its use. The effect of his return would "not be good," as to the students, because "the behavior of a faculty member who would have used marijuana would be . . . [an] . . . example in opposition to the instructions which we are giving . . . [to the students] . . ." in "a campaign, instructional campaign, going on within our own school district . . . on drug use and abuse." Directly asked for her "overall opinion" concerning Jones' "fitness to teach after his conviction of marijuana possession and his admission to marijuana use," Miss Riggs testified that it "would not be a positive one," and "would, in fact, work against the total goals of our school," because it would not indicate to the students "the kind of behavior which they are told to develop."

Miss Riggs also testified that her knowledge of Jones' arrest and conviction in Hawaii, and of his admissions to the use of marijuana (see fn. 7, *ante*), was based exclusively upon information she had received after Jones had been suspended in the course of the administrative proceedings commenced against him in October 1969. Jones, however, called at the trial in his own behalf, testified in effect that his 1969 arrest and conviction had been reported in the San Francisco Chronicle.[8] (He also denied having made the oral admissions attributed to him by Officer Higashi, and testified to the general effect that he could have successfully defended the Hawaii prosecution, but pleaded *nolo contendere* therein as a matter of convenience.)

Upon the foregoing evidence, the trial court made findings of fact which in effect dismissed some of the original charges against Jones but, sustaining others, found cause for his dismissal.[9] Jones appeals from the judgment, next duly entered, authorizing his dismissal.

---

[8]Jones' testimony to this effect was given in the following dialog: "Q. [By his counsel] Did you, between the time you returned and resumed your teaching [after the arrest and conviction] to the time you were suspended, discuss with any faculty, administration or students your conviction? A. No. Q. Do you know whether or not they found out about it? A. I didn't know anything until I was called in and told I was suspended. Q. Do you know how the public found out about your arrest and conviction? A. I don't know. Q. Did you see any newspaper reports about this? A. I saw the San Francisco paper, San Francisco Chronicle. Q. Did that have your name in it? A. Right, it did."

[9]The court found and concluded as follows:
"1. That on or about August 19, 1969, in the Circuit Court of the Fifth Circuit, State of Hawaii, . . . [Jones] . . . was convicted of the unlawful possession or control of marihuana in violation of . . . [Hawaii law] . . .
"2. That at the time of his arrest on said charges . . . [Jones] . . . admitted

██ ██ Challenging the administrative determination and the trial court's action in each of the cases before us, appellants contend (1) that, as a matter of law, possession of marijuana, or conviction for the crime thereof, cannot amount to "immoral or unprofessional conduct," or to an act or crime "involving moral turpitude" or demonstrating "evident unfitness for service," within the meanings of these terms as used in Education Code sections 13202, 13129, subdivision (e) and 13403; and (2) that, as a matter of proof, the contrary conclusion reached by the trial court, in each of the present cases respectively, is not supported by substantial evidence.

██ The first argument rests upon the propositions assertedly advanced in selected scientific and other authorities, cited in appellants' briefs, to the effect that the use of marijuana is medically harmless and (although illegal) commonplace among students and adults in California and elsewhere.[10] If these propositions were accepted as true (and we are requested

---

that he smoked marihuana and further stated that a package of marihuana found in the room occupied by the defendant and a companion was his;

"3. That the charges filed by the Superintendent of the plaintiff school district, i.e., for immoral conduct, evident unfitness for service and conviction of a crime involving moral turpitude are sustained;

"4. That it has not been established that the offense of which . . . [Jones] . . . was convicted is a felony;

"5. That the charge of dishonesty has not been sustained;

"6. That conviction of a crime equal to a violation of Section 11530 of the Health and Safety Code is not a cause for dismissal under Educational Code Section 13403;

"7. That the charges sustained adversely affect . . . [Jones'] . . . fitness as a teacher;

"8. That . . . [respondent school district] . . . is authorized to dismiss . . . [Jones] . . . from his position as a permanent, certificated employee."

It thus appears (from finding No. 3) that the trial court found cause to dismiss Jones for "immoral or unprofessional conduct" (Ed. Code, § 13403, subd. (a)) and "evident unfitness for service" (*id.*, subd. (e)) with regard to his possession of marijuana (and his admission to using it) on August 19, 1969; and for his subsequent "conviction" of the possession, which was, in the court's judgment, "a crime involving moral turpitude." (*Id.*, subd. (h).)

. [10]As cited, the authorities include Berg, *Illicit Use of Dangerous Drugs in the United States* (Drug Sciences Division, Bureau of Narcotics and Dangerous Drugs, U. S. Department of Justice, 1970); Francis and Patch, *Student Attitudes Toward Drug Programs* (Committee on Drug Education, University of Michigan, 1969); Garfield and Boering, Marijuana Use on a Campus (1969); Green and Blumberg, Bruce, Boalt Hall Survey: Casing the Joint (1969); Kaplan, Marijuana, The New Prohibition (World Publishing Co., 1970); Keup, *The Legal Status of Marijuana* (Aug. 1969) 30 Diseases of the Nervous System 517; Lipp et al., Medical Student Use of Marijuana, Alcohol and Cigarettes, etc.; Manheimer et al. (Nov. 1969) Use of Marijuana Among an Urban Cross-Section of Adults; Marijuana and Health, A Report to Congress from the Secretary, U. S. Department of Health, Education and Welfare; Task Force Report: Narcotics and Drug Abuse (President's Commission on Law Enforcement and Administration of Justice, 1967); 4 Res Gestae

to take judicial notice of their truth), appellants argue that, as a matter of law, possession of marijuana cannot be "immoral," or an "act involving moral turpitude" as such terms have been defined by the courts. (Appellants cite, e.g., *Board of Education* v. *Weiland* (1960) 179 Cal.App.2d 808, 811 [4 Cal.Rptr. 286], and *Palo Verde etc. Sch. Dist.* v. *Hensey* (1970) 9 Cal.App.3d 967, 971-972 [88 Cal.Rptr. 570] ["immoral"]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 73 [64 Cal. Rptr. 785, 435 P.2d 553] ["moral turpitude"].) We do not accept—because we do not reach—the dubious premise that a criminal act cannot be characterized as "immoral" if it is medically harmless or commonly committed; appellants' argument to this effect fails for other reasons.

In the first place, we cannot judicially notice the *truth* of the stated propositions that the use of marijuana is harmless or commonplace. The authorities cited to both effects (see fn. 10, *ante* [first paragraph]) were mentioned in a brief submitted by Comings in his trial court, but it does not appear that judicial notice of the truth of their asserted conclusions (i.e., that marijuana was harmless and that its use was common) was "requested" in that court (Evid. Code, § 455, subd. (a)) or taken by it with advance notice to the opposite party. (*Id.*, subd. (b).) In all events, the accuracy of the matters asserted, in either proposition, is the subject of intense scientific and popular controversy; actual judicial knowledge of the relevant truths is limited; and there is no evidence, in either record on appeal, supporting a conclusion either way. Accordingly, it cannot be said that the "propositions" stated in the cited authorities are of "generalized knowledge" or "common knowledge," and are not reasonably subject to "dispute," so as to permit their being judicially noticed as true. (Evid. Code, § 451, subd. (f); *id.*, § 452, subds. (g), (h). Cf. *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 87 [88 Cal.Rptr. 907] and authorities cited; Witkin, Cal. Evidence (2d ed. 1966) §§ 178-179, pp. 164-165.)[11]

---

(Mich. Law School, 1970) No. 25; Rosevear, Pot: A Handbook of Marijuana (1967); Soloman, The Marijuana Papers (Signet ed. 1966); and several newspaper articles.

(On Comings' appeal, the Attorney General counters the foregoing authorities by quoting, to the contrary effect (i.e., that the use of marijuana is harmful), Kolansky and Moore, *Effects of Marihuana on Adolescents and Young Adults* (Apr. 19, 1971) 216 A.M.A.J. No. 3.)

[11]The two decisions cited by appellants in support of our judicially noticing the truth of these propositions, as advanced in the scientific and other authorities cited (see fn. 10, *ante* [first paragraph]), are not in point. Some of the same authorities were invoked and quoted in one of them (*Leary* v. *United States* (1969) 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532]) to the statistical effect that marijuana usage had become relatively common in this country (see e.g., *id.*, at pp. 40-41 [fn. 78] [23 L.Ed.2d at p. 84]) and for other purposes, but not on the subject of its "immoral-

■    More significantly, appellants' first argument misses the mark because it amounts to semantic preoccupation with the statutory terms "immoral," and the like, as criteria for analyzing the conduct of public school teachers for disciplinary purposes. This approach is incorrect. As bases for administrative sanctions against persons who hold governmentally issued credentials which qualify them for employment, the statutory terms "constitute only lingual abstractions until applied to a specific occupation and given content by reference to fitness for the performance of that vocation." (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 239 [82 Cal.Rptr. 175, 461 P.2d 375].[12] Cf. *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 665 [97 Cal.Rptr. 320, 488 P.2d 648].) In a disciplinary proceeding against a public school teacher, the administrative agency cannot "abstractly characterize" his conduct in the statutory language (i.e., as "immoral" and so on) unless that conduct indicates his unfitness to teach. (*Morrison* v. *State Board of Education, supra,* at p. 229. Cf. *Palo Verde etc. Sch. Dist.* v. *Hensey, supra,* 9 Cal.App.3d 967 at p. 972; *Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App.3d 820, 825-826 [94 Cal. Rptr. 318]; *Governing Board* v. *Brennan* (1971) 18 Cal.App.3d 396, 402 [95 Cal.Rptr. 712]; *Blodgett* v. *Board of Trustees* (1971) 20 Cal.App.3d 183, 191 [97 Cal.Rptr. 406]. See Louisell and Sinclair, *The Supreme Court of California 1969-1970* (1971) 59 Cal.L.Rev. 30, 58 et seq.)

Education Code section 13202 may be construed as constitutional only when so interpreted. (*Morrison* v. *State Board of Education, supra,* 1 Cal. 3d 214 at pp. 218, 230, 235; *Governing Board* v. *Brennan, supra,* 18 Cal. App.3d 396 at pp. 400-401; Louisell and Sinclair, *op cit. supra,* 59 Cal.L. Rev. 30 at pp. 58, 63.) The *Morrison* test, however, applies in administrative proceedings directed to dismissal of a teacher under Education Code sec-

---

ity" or to the point of the court's choosing sides in a debate as to whether or not it was medically harmful. (*Id., passim.* See Witkin, *loc. cit. supra.*) In the other decision cited by appellants (*People* v. *Woody* (1964) 61 Cal.2d 716 [40 Cal.Rptr. 69, 394 P.2d 813]), the California Supreme Court's account of the medical effects of peyote was derived from "[a]n examination of the record" (*id.,* p. 720), not through the medium of judicial notice.

[12]The *Morrison* court also pointed out that the various statutory terms "immoral conduct," "unprofessional conduct," "moral turpitude," and "evident unfitness for service," "substantially overlap one another" (*id.,* at p. 220 [fn. 9 and accompanying text]); and that the validity of disciplinary action does not depend upon conduct of a criminal nature or the event of a criminal conviction therefor. (*Id.,* at p. 219 [fn. 4, last paragraph].) We mention these aspects of *Morrison* because they preclude any questions arising from the facts that Comings and Jones were both convicted of crime or that Jones' conviction was based upon a plea of *nolo contendere.* (See fns. 3 and 9, *ante.* As to a *nolo contendere* problem in other cases, see *Kirby* v. *Alcoholic Bev. etc. App. Bd.* (1969) 3 Cal.App.3d 209, 219-222 [96 Cal.Rptr. 863]; *Grannis* v. *Board of Medical Examiners* (1971) 19 Cal.App.3d 551, 557-560 [96 Cal.Rptr. 863].)

tion 13403, as well as revocation of certification documents under section 13202. (*Board of Trustees* v. *Stubblefield, supra,* 16 Cal.App.3d 820 at p. 826.)

To be valid in either case, the imposition of discipline must be supported by *evidence* of the person's unfitness to teach. (*Morrison* v. *State Board of Education, supra,* at pp. 218, 236-237; *Governing Board* v. *Brennan, supra,* at p. 402.) This may include evidence that his conduct indicates a potential for adverse school relationships in the future, or has achieved such notoriety as to impair those in which he is already involved. (*Morrison* v. *State Board of Education, supra,* at pp. 235, 237;[13] *Board of Trustees* v. *Stubblefield, supra,* at p. 826.) For all these reasons, we are necessarily remitted to the second question raised by appellants: i.e., whether there is substantial evidence, in either record on appeal, of the respective subject's unfitness to teach.

### *The Comings Appeal (1 Civil 29298): Disposition*

The Comings record (1 Civil 29298) shows the bare facts of his February 1967, arrest in San Diego for possession of marijuana, the circumstances immediately attending it (see fn. 1, *ante*), his subsequent prosecution for violating Health and Safety Code section 11530, and his conviction. He was convicted in or about June 1967 (see fn. 2, *ante*), but the accusation against him was not filed with the State Board of Education until August 1968; a degree of "remoteness in time of the conduct" (see fn. 13, *ante*) was thus suggested, but not analyzed.

Whether Comings' conduct "adversely affected students or fellow teachers," or in what "degree" (see fn. 13, *ante*), is not even suggested by the record; the latter, in fact, does not show whether or where he taught in a California public school at any time, thus precluding any inference as to the relevant notoriety of his conduct. No inquiry was made into "extenuating or aggravating circumstances, if any, surrounding the conduct," the likelihood of its recurrence, or Comings' motives. (*Ibid.*) The record con-

---

[13]*Morrison* is also explicit as to factors which are relevant to the inquiry required of the administrative agency: "In determining whether the teacher's conduct thus indicates unfitness to teach [the agency] may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." (*Id.,* at p. 229 [fns. omitted]. See Louisell and Sinclair, *op. cit. supra,* 59 Cal.L.Rev. 30 at pp. 62-63.)

tains even less evidence of his "unfitness to teach" than appeared in the record held insufficient in *Morrison*; it thus falls short of the showing required, under the *Morrison* test, to support revocation of his certification documents.

While we must therefore reverse the judgment in 1 Civil 29298 (as to Comings), we here paraphrase (as to him and his conduct) some relevant language by the *Morrison* court: "Our conclusion affords no guarantee that [Comings' certification documents] cannot be revoked. If the Board of Education believes that [he] is unfit to teach, it can reopen its inquiry into the circumstances surrounding and the implications of the [1967] incident . . . . The board also has at its disposal ample means to discipline [him] for future misconduct. [Par.] Finally, we do not, of course, hold that [marijuana offenders] must be permitted to teach in the public schools of California. ■ As we have explained, the relevant statutes, as well as the applicable principles of constitutional law, require only that the board properly find, pursuant to the precepts set forth in this opinion, that an individual is not fit to teach. Whenever disciplinary action rests upon such grounds and has been confirmed by the judgment of a superior court following an independent review of the evidence, this court will uphold the result." (*Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214 at pp. 239-240 [fns. omitted].)

### *The Jones Appeal (1 Civil 29573): Disposition*

■ We reach an opposite result upon Jones' appeal (1 Civil 29573) from the superior court's judgment authorizing his dismissal as a permanent, certificated employee of respondent Jefferson Union High School District. Margaret Riggs testified at length to her opinions concerning Jones; her qualifications to do so, as vice-principal of the school where he was employed in and prior to 1969, appear in the record and are unchallenged on the appeal. Many of her opinions were directed to the adverse effect of Jones' "return" to the school, which is not entirely relevant to the question whether he was justifiably dismissed from it. She nevertheless testified directly to Jones' "fitness to teach," and her opinion can only be read (1) to the effect that he was unfit and (2) as stating valid reasons for this conclusion.

It is also true that Miss Riggs learned of Jones' conduct in Hawaii only after respondent school district's governing board had suspended him in consequence thereof. The conduct itself, however, and the other pertinent events in Hawaii, were reported in the San Francisco Chronicle. (See fn. 8, *ante,* and accompanying text.) As it may reasonably be inferred that the

salient facts thus reached the attention of many persons in Daly City, it may also be inferred that Jones' conduct attained a degree of timely notoriety among persons—students, teachers, parents, and others—interested in Westmoor High School. (See *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214 at p. 237; *Board of Trustees* v. *Stubblefield, supra,* 16 Cal. App.3d 820 at p. 826.) Overall, we find substantial evidence of Jones' "unfitness to teach," at relevant times and places, as required by the *Morrison* test. The judgment in 1 Civil 29573 must therefore stand.

The judgment in 1 Civil 29298 is reversed. The judgment in 1 Civil 29573 is affirmed.

Devine, P. J., concurred.

A petition for a rehearing in No. 29573 was denied February 24, 1972, and the petitions of appellant Jones and respondent Board for a hearing by the Supreme Court were denied March 30, 1972.