OPINION
{¶ 1} This is an appeal from the judgment of the Allen County Court of Common Pleas, which reversed the Appellant, Ohio State Board of Education's (Board) decision to deny renewal of Appellee, Robert Freisthler's (Freisthler), teaching license.
 {¶ 2} On August 4, 1995, Freisthler, then a teacher in the Jackson Center School District, was arrested for sexual imposition for allegedly engaging an undercover officer, Vic Coleman, in a sexually suggestive conversation and touching the officer's groin area in a park. Coleman plead guilty to a lesser offense of persistent disorderly conduct. He was fined $250 and sentenced to 30 days in jail with 30 days suspended on the condition that Freisthler observe the terms of two years of probation. As part of his probation, Freisthler was ordered to attend counseling, stay out of any city and county owned parks, and to disclose the incident to all employers when applying for a teaching position.
 {¶ 3} In order to prevent publicity regarding the incident, Freisthler resigned his position with the Jackson Center School System. Thereafter, Freisthler applied for a position as a long-term substitute teacher for the Culinary Arts Program of the Lima City Schools. During the hiring process, Freisthler revealed to the Director of Career and Technical Education for the Lima City Schools, Carin Doseck, that he had been arrested for soliciting an undercover officer in the park and was convicted of disorderly conduct. Doseck hired Freisthler as a long-term substitute in the Culinary Arts Program. Later in 1996, Freisthler worked as a substitute teacher at North Middle School, which is also part of the Lima City Schools. When he began teaching at North Middle School, Freisthler notified the principal, Jill Allen, that he had been arrested for soliciting an undercover officer in the park and that he pled guilty to persistent disorderly conduct. Freisthler worked at North Middle School for approximately two years.
 {¶ 4} In 1999, Freisthler applied with the Perry Local School District for the position of music director. While being interviewed by the superintendent, Michael Lamb, Freisthler notified him that he had been arrested in the park in 1995 for sexual involvement with a male undercover officer. The Perry Board of Education, with that knowledge, gave Freisthler a one-year contract for the 1999-2000 year by a unanimous vote. His contract was renewed for the 2000-2001 school year again by a unanimous vote.
 {¶ 5} On June 6, 2000, Freisthler applied to the state Board for an eight-year renewal of his teaching license. He attached a letter to the application, which stated, in relevant part, "In the summer of 1995, I plead guilty to PERSISTENT DISORDERLY CONDUCT, a 4th degree misdemeanor. I had an inappropriate conversation with an undercover police officer and made physical contact in the form of a touch to that officer." On October 2, 2000, the Board notified Freisthler that it intended to deny Freisthler's request for renewal and that he was entitled to a hearing under R.C. 119.12. A hearing was held on November 6, 2000.
 {¶ 6} At the hearing, the Board called Vic Coleman, the under-cover police officer from the August 1995 incident and Charles Kessler, an employee of the Ohio Department of Education Office of Professional Conduct who reviews applications and criminal background checks for Ohio teacher license candidates. Officer Coleman testified as to sitting in his vehicle in the park, Friesthler pulling his vehicle up to his location and intitiating casual conversation which gradually turned sexually suggestive, Friesthler eventually approaching Coleman and upon further conversation, an inappropriate touching of his chest and groin by Friesthler. Kessler never met with or interviewed Friesthler but testified that he understood the facts in this case to be as described by Coleman and that the behavior was unbecoming a teacher. Friesthler also testified and acknowledged an inappropriate "invasion of Coleman's space" during the encounter but did not corroborate Coleman's allegations as to any specific touching.
 {¶ 7} In addition Freisthler called several of his employers from the last seven years as witnesses. Doseck, his supervisor when Freisthler worked for the Culinary Arts Program, testified that she did not receive any complaints regarding Freisthler and that she was impressed with Freisthler's performance as a teacher. She further testified that she knew that Freisthler initiated a sexually suggestive conversation with another man in the park and that Freisthler was convicted of disorderly conduct. Doseck was not aware that Freisthler touched the officer. However, Doseck also testified that even if the Board's version of the facts was true, she would still hire Freisthler and that he should remain a teacher.
 {¶ 8} Allen, the principal at North Middle School, testified that she did not receive any complaints regarding Freisthler and that she found Freisthler's performance to be "exemplary." Furthermore, Allen stated that she was aware of the sexually suggestive conversation in the park, the conviction, and that Freisthler touched the officer in the chest. Finally, Allen testified that Freisthler should remain a teacher and that she would want him to teach her own children.
 {¶ 9} Michael Lamb, the superintendent of the Perry City School District, testified that he has had no complaints regarding Freisthler and that Freisthler is an asset to the school. Furthermore, Lamb testified that a conviction of disorderly conduct based on the allegations of this case did not warrant denying Freisthler's renewal. Additionally, Doug Smith, a hiring consultant to the Perry City Schools, testified that he recommended that the Perry Local School District hire Freisthler and that the incident on August 4, 1995 would not preclude Freisthler from serving as a teacher.
 {¶ 10} Finally, Rosalyn Liston, Freisthler's counselor, testified that Freisthler had successfully completed his probationary counseling and that he is not a threat to children or anyone else. Furthermore, she testified that she did not hear anything at the hearing regarding Freisthler or the incident that would render Freisthler unqualified to teach.
 {¶ 11} On July 20, 2001, the hearing officer filed her report with the Board. The hearing officer found the following, "Therefore in determining whether Mr. Freisthler's August 4, 1995 is so "unbecoming" as to deny him his teaching certificate, this Hearing Officer has considered the totality of the circumstances, including the nature of Mr. Freisthler criminal offense, his rehabilitation, his recommendations from credible witnesses in the teaching profession with personal knowledge of his character and teaching abilities. Based on the witness testimony and the exhibits presented, this Hearing Officer recommends that Mr. Freisthler's application be approved."
 {¶ 12} On October 19, 2001, the Board passed a resolution, which rejected the hearing officer's report. The resolution stated "WHEREAS in reversing the recommendation of the hearing officer, the Board reviewed the evidence and found by a preponderance that the testimony of the officer was more persuasive than that of the respondent as to the facts; and WHEREAS the facts revealed by the police officer indicated that Mr. Freisthler engaged in inappropriate sexual touching in a public place; and WHEREAS the facts as established by the officer were the basis upon which a plea of guilty to an amended charge was entered by Mr. Freisthler; and WHEREAS while the criminal conviction of Mr. Freisthler constitutes a misdemeanor of the fourth degree, the conduct engaged in by Mr. Freisthler is clearly unbecoming to the position of a certified educator; and WHEREAS the recommendation of by teaching professionals do not outweigh the gravity of the conduct engaged in by Mr. Freisthler; and WHEREAS, the State Board of Education's consistent sanction upon finding that an individual has engaged in sexual conduct in a public place has been revocation or denial of teaching privileges: Therefore, Be It RESOLVED, That the State Board of Education DENIES the pending application for an eight-year renewal of Robert L. Freisthler's teaching certificate and further denies him the right to reapply for a teaching certificate of license until July 1, 2003 * * *."
 {¶ 13} On November 13, 2001, Freisthler appealed the decision of the Board to the Allen County Court of Common Pleas pursuant to R.C.119.12. The Perry Local School District filed a brief and motion to appear Amicus Curiae on behalf of Freisthler stating that the school district has a strong interest in this case as they would no longer be able to employ Freisthler if his teaching certificate were not renewed. The trial court granted this motion.
 {¶ 14} On March 22, 2002, the trial court issued its ruling reversing the decision of the Ohio Board of Education finding "that the decision by the State Board of Education not to grant the Appellant a renewal certificate is not supported by reliable, probative and substantial evidence and is not in accordance with the law. The Board did not adequately set forth its basis for rejecting the referee's recommendations."
 {¶ 15} The Board now appeals asserting two assignments of error which assert the following (1) "THE COURT BELOW ERRED IN CONCLUDING THAT THE STATE BOARD'S ORDER WAS NOT SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE BASED UPON THE RECORD OF THE HEARING OFFICER" (2) "THE COURT BELOW ERRED IN CONCLUDING THAT THE STATE BOARD'S DENIAL OF FREISTHLER'S APPLICATION WAS NOT IN ACCORDANCE WITH THE LAW DESPITE THE STATE BOARD'S STATUTORY AUTHORITY AND INTERPRETING CASE LAW."
 {¶ 16} R.C. 3319.31 describes the circumstances in which the Board may refuse to issue a teaching license. This section provides that the decision should be made "in accordance with Chapter 119." See Windon v.State Board of Education (Oct.14, 1996) Meigs App. No. 95 CA17 at *2. The Appellee asserts and the trial court found that the criteria in R.C.3319.16 governs in determining the standard of review that the Board was required to use when evaluating the hearing officer's report. However, R.C. 3319.31, not R.C. 3319.16, governs the state board of education's right to refuse the issuance of a teacher's license or certificate, while R.C. 3319.16 governs a county or city board of education's termination of a teachers contract and the procedures required. As R.C. 3319.31
specifically requires that the Board comply with R.C. 119, we find that R.C. 119.09 governs the Board's duty as to the referee's report and recommendation.[1] See also Winters v. State Bd. of Ed. (Jan. 10, 1995), Columbiana App. No. 93-C-3 (Donofrio, J., concurring).
 {¶ 17} R.C. 119.06 provides that an individual who has been denied renewal of a license is entitled to a hearing which is in adherence with the following administrative procedures: "[T]he agency may appoint a referee or examiner to conduct the hearing * * *. The referee or examiner shall submit to the agency a written report setting forth his findings of fact and conclusions of law and a recommendation of the action to be taken by the agency. * * * The recommendation of the referee or examiner may be approved, modified or disapproved by the agency, and the order of the agency * * * shall have the same effect as if such hearing had been conducted by the agency. * * * If the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval." R.C. 119.09.
 {¶ 18} R.C. 119.12 provides for the appeal of an agency's decision to the court of common pleas: "The [trial] court may affirm the order of the agency complained of in the appeal if it finds upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with the law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative and substantial evidence and is in accordance with the law." See also Hoffman v. StateBd. of Edn. (2001), 145 Ohio App.3d 392, 395.
 {¶ 19} This court's review of the common pleas court's decision on questions of fact is limited to determining if the common pleas court abused its discretion. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. Furthermore, an appellate court does not determine the weight to be given the evidence. See Rossford ExemptedVillage School Dist. Bd. of Edn. v. State Bd. of Edn. (1992),63 Ohio St.3d 705, 707. Accordingly, absent an abuse of discretion by the trial court, this court must affirm the trial court's judgment.Pons, supra. However, on questions of law, the common pleas court may not exercise discretion and the court of appeals' review is plenary.Kohl v. Perry County Board of Mental Retardation and DevelopmentalDisabilities (Sept. 29, 1994), Franklin App. No. 94APE01-122 at *2.
 {¶ 20} R.C. 3319.31(B)(1) provides that the state board can refuse to issue a teaching license for, in relevant part, "[e]ngaging in an immoral act, incompetence, negligence or conduct that is unbecoming to the person's position." While not explicitly expressed in R.C.3319.31(B)(1), several appellate courts in Ohio have determined that when evaluating whether conduct is "unbecoming" a teacher that the board must show some nexus between the conduct that the individual is accused of and the individual's performance as a teacher. Hoffman, supra; Sayers v.Ohio State Bd. of Edn. (Dec. 1, 1994), Cuyahoga App. No. 66578 at *4;Johnson v. State Bd. of Edn. (May 14, 1990), Stark App. No. CA-8019 at *2. Furthermore, several other states that have similar teacher certification statutes have required some nexus between the alleged misconduct and teaching ability when the criteria for denial of a license are "unprofessional conduct," "unfitness for service" or "moral unfitness." See Thompson v. Dept. of Pub. Instruction (1995)197 Wis.2d 688; Erb v. Iowa State Bd. of Pub. Instruction (1974),216 N.W.2d 339, (superceded by statute on other grounds); Comings v.State Bd. of Edn. (1972), 23 Cal.App.3d 94.
 {¶ 21} Specifically, the California Supreme Court has determined that phrases such as "immoral" and "unprofessional" in a teacher certification statute only pass constitutional scrutiny if applied to the vocation at which point the test becomes whether the individual and his conduct reflect an "unfitness to teach." Morrison v. State Board ofEducation (1969), 1 Cal.3d 214, 239; see also Comings, supra. Similarly, we find that implicit in the wording "conduct that is unbecoming to the person's profession, i.e. teaching" is a requirement that the conduct in some way affect the individual's ability to teach. To decide what constitutes conduct unbecoming a teacher without any regard to teaching, is to base the decision solely on the Board's determination of what is unacceptable behavior and "such a statute, unless narrowed by clear and well-known standards, affords too great a potential for arbitrary and discriminatory application and administration." Morrison, supra.
 {¶ 22} To remedy this problem, the court in Morrison suggested several criteria to evaluate when determining whether a teacher is unfit to teach including: "likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuation or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling affect upon the constitutional rights of the teacher involved or other teachers." As neither R.C. 3319.31, nor the courts interpreting this section offer any consistent application as to what constitutes conduct unbecoming a teacher, we find the criteria in Morrison helpful in making this determination.
 {¶ 23} In this case, Freisthler's conduct and conviction were not publicized and there is no evidence in the record that any students were made aware of the matter. Furthermore, the teachers and administrators who were made aware of the conduct have testified that Freisthler is an exceptional teacher and have offered what is, in essence, uncontroverted expert opinion testimony that under the totality of circumstances, Freisthler's conduct has not proved unbecoming to his position and should not affect his ability to obtain renewal of a teaching certificate.
 {¶ 24} Some of the "totality of circumstances" significant to us, include the fact that from the time of this incident seven years ago, Freisthler has remained fully licensed and has continued to teach, without incident or complaint, in a variety of teaching positions with two different school districts, including five years of teaching after the successful completion of his two-year court-ordered probation. At no time during this seven-year period, does the record reflect that the state Board ever took steps to inform itself of this incident or ever acted to revoke Freisthler's teaching license. Nor did the Board, other than stating their simple conclusion that the police officer's testimony concerning the incident outweighed the testimony of all the other witnesses, produce any evidence to indicate that the incident ever had any impact upon Freisthler's ability to teach effectively, his reputation or regard within the profession or the safety and well-being of the children in his care. Finally, we note that even in denying the license renewal, the Board only extended its ruling for a limited period until July 2003 at which time Freisthler would be permitted to reapply for certification.
 {¶ 25} Based on the foregoing, the Board's first assignment of error is overruled. The second assignment of error is sustained only to the extent that we find that R.C. 119 dictates the appropriate standard of review for the Board to follow when evaluating the hearing officer's decision in an action pursuant to R.C. 3319.31.
 {¶ 26} However, notwithstanding an erroneous reference to R.C.3319.16, in the trial court's opinion, we cannot find that the trial court abused its discretion in determining that in this instance, the Board's decision not to renew Freisthler's license was not supported by reliable, substantial, probative evidence and was not in accordance with the law. Accordingly, the judgment of the Common Pleas Court of Allen County is affirmed.
Judgment affirmed.
WALTERS, J., concurs.
 HADLEY, J., dissents.
[1] While this Court in Steltzer v. State Board of Education (1991),72 Ohio App.3d 529, applied the standard of review in R.C. 3319.16 in an R.C. 3319.31 case, we have reconsidered this application and now find the standard of review to be in accordance with this opinion.