[Civ. No. 18808. First Dist., Div. Two. Apr. 18, 1960.]

THE BOARD OF EDUCATION OF THE SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Respondents, v. MARILYN WEILAND, Appellant.

Joseph A. Brown for Appellant.

Dion R. Holm, City Attorney, and Irving G. Breyer for Respondents.

PAULSEN, J. pro tem.*—This is an appeal from a judgment permitting plaintiffs to dismiss defendant and to terminate her employment as a tenure teacher in the San Francisco Unified School District. Two complaints were filed by respondents against the appellant based upon verified charges

---

*Assigned by Chairman of Judicial Council.

filed with respondents by the Superintendent of Schools. The first complaint sets forth charges of (1) immoral conduct, (2) unprofessional conduct, and (3) dishonesty, all three charges being based specifically upon the fact that appellant had falsified attendance records of her class for adults by signing the names of students to such records when in fact the students were absent. The second complaint charged (1) evident unfitness for service, and (2) unprofessional conduct. These charges were based upon numerous letters written and sent by appellant which contained statements of a defamatory and degrading nature concerning her associates and administrative superiors. The two actions were consolidated for trial. The court found that all the charges were true.

Appellant taught typing in the adult classes of the San Francisco school department from 1945 to 1957. The rules of the district required teachers to keep an accurate attendance record to be used in determining state apportionments and the need for continuing certain kinds of instruction. Appellant admitted that she was familiar with these rules. While testifying, she admitted that she had attended a faculty meeting where the size of classes was discussed by Miss Ward, the principal. The record then shows that the following questions were asked and the following answers were given: "Q. What, if anything, was said at that meeting concerning class sizes? A. Miss Ward announced before the entire faculty that when a class goes down to 15 in three successive evenings, the class would be automatically dropped off the roll and the teacher would lose her position. Q. And you heard that? A. I heard it. Q. You didn't want to lose your position, did you? A. Yes—no. No one wants to lose their position."

Appellant testified that she falsified the records to the extent, at least, of adding the names of three persons who were absent. Former students were called as witnesses and testified to facts which, if true, proved that the number was greater. Whatever the correct number might have been, it appears that a few days before the end of the school year, it was obvious that without some additions to the attendance record the number would fall below the number required for continuation of the class and that in that event appellant would lose her position. It was at that time that she started to make up the deficiency.

Appellant testified, and now argues, that similar conditions existed with respect to other teachers; that she was indignant and that she used that means "to expose the situa-

tion." She argues further that she acted honestly and did not intend to defraud the state or district. If true, the practices of others did not justify her conduct and the record amply supports the conclusion of the trial court that the purpose of the falsification was to secure appellant's continued employment. The evidence was clearly sufficient to support the findings.

Section 13526 of the Education Code provides, among other things, that when a written charge of immoral conduct, duly signed and verified, is filed with the governing board of the district, the board may suspend the employee. Other grounds are included but suspension at that stage of the proceedings is not authorized when the charge is unprofessional conduct, dishonesty or evident unfitness for service. Appellant now argues that the only purpose of including a charge of immoral conduct in the first complaint was to secure authority to suspend her, and that there was no evidence to support the charge.

▋ No California case has been called to our attention, and we have found none, which defines "immoral conduct" as used in section 13521 of the Education Code, and it appears to be appellant's contention that conduct cannot be immoral unless it has some relation to a sexual offense. In *Orloff* v. *Los Angeles Turf Club*, 36 Cal.2d 734, at page 740 [227 P.2d 449], the Supreme Court quotes with approval the following statement from Words and Phrases, permanent edition, volume 20, pages 159-160: "The term 'immoral' has been defined generally as that which is hostile to the welfare of the general public and contrary to good morals. Immorality has not been confined to sexual matters, but includes conduct inconsistent with rectitude, or indicative of corruption, indecency, depravity, dissoluteness; or as wilful, flagrant, or shameless conduct showing moral indifference to the opinions of respectable members of the community, and as an inconsiderate attitude toward good order and the public welfare."

Many cases involving unprofessional conduct on the part of attorneys at law have branded the acts committed as involving moral turpitude, even though the acts did not relate to sexual matters. Representative of this class of cases is *Sullivan* v. *State Bar*, 52 Cal.2d 747 [344 P.2d 304]. ". . . [M]oral turpitude is sometimes used as synonymous with 'dishonesty,' or a high degree of unfairness. . . . There is necessarily a field of doubtful cases where the determination as to whether

moral turpitude is involved may fall on one or the other side of the line, depending upon the circumstances of the particular case. And whether an offense is malum in se or malum prohibitum is not necessarily determinative of whether or not it involves moral turpitude. . . ." (6 Cal.Jur.2d, Attorneys at Law, § 72, pp. 215-216.) We see no reason why the same reasoning should not apply to a charge of immoral conduct made against a teacher. The confidential relations existing between attorney and client are in many respects similar to those existing between a teacher and his pupils. ██ As said in *Goldsmith* v. *Board of Education*, 66 Cal.App. 157, 168 [225 P. 783] : ". . . [T]he calling [of a teacher] is so intimate, its duties so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment. . . . His habits, his speech, his good name, his cleanliness, the wisdom and propriety of his official utterances, his associations, all are involved. His ability to inspire children and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention. . . ."

Appellant admitted that she had no feeling of remorse for what she had done except to the extent that it has caused her trouble. Her acts were deliberately designed to defraud the state and the district and were essentially criminal in nature. The charge of immoral conduct and the finding thereon was amply supported.

██ Appellant also argues that inasmuch as the grounds of removal are separately stated in section 13521, it was error to have them "split up and multiplied," and that each of these charges is something entirely different from each of the others. She relies for this interpretation of the section on *Fresno City H. S. Dist.* v. *De Caristo,* 33 Cal.App.2d 666 [92 P.2d 668]. The same contention was made in *Board of Education* v. *Swan,* 41 Cal.2d 546 [261 P.2d 261], and found to be without merit. In that case the teacher was charged with unprofessional conduct, evident unfitness for service, and persistent violation of or refusal to obey the school laws, etc. At pages 550 and 551, the court said: ". . . there appears to be nothing in the relevant code provisions which would prohibit such practice in formulating the accusatory pleading. . . . Manifestly, a particular act or omission of a teacher may constitute unprofessional conduct, evident unfitness for service, and a persistent violation of or refusal to obey prescribed

rules and regulations. Defendant's citation of *Fresno City H. S. Dist.* v. *De Caristo,* 33 Cal.App.2d 666 [92 P.2d 668], does not strengthen her position. There it was merely said that each of the causes for removal stated in the code refers to 'acts or omissions not necessarily included in the others.' (P. 672.) That is not a statement that the acts or omissions charged may not be included in one or more causes for removal.''

In support of the charges set forth in the second complaint, respondents offered into evidence, and over appellant's objection the court admitted, a number of letters written by appellant. Some of them contained a statement that they were confidential. Appellant now argues that as the author of the letters she had a right to control their use and publication. She cites 34 American Jurisprudence 410 et seq., Literary Property and Copyright, section 14. We need not discuss this point. When the first letter was offered, appellant objected on the ground that the letter was ''irrelevant and immaterial.'' When the other letters were offered, she objected ''on the same grounds.'' ▉ The objection now raised was not stated at the time the letters were offered, and the law is too well settled to need citation of authority that a trial court is not required to rule on grounds of objection not stated. There was no error in the ruling.

▉ Appellant has not contended that the evidence is insufficient to support the findings made in the second complaint and it appears that she has waived such a contention. However, we have read the record and in view of her defamatory accusations against many of the school authorities and her statements showing such violent race prejudices that she could not be expected to deal fairly with mixed classes, the findings are amply supported.

▉ As a final complaint, appellant asserts that she was not given notice as required by section 13525 of the Education Code. The charges or anything charged in this case did not include incompetency and the section was not applicable.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 8, 1960.