[Civ. No. 36691. Second Dist., Div. Two. Apr. 20, 1971.]

BOARD OF TRUSTEES OF THE COMPTON JUNIOR COLLEGE DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Respondent, v. JOSEPH WILLIAM STUBBLEFIELD, Defendant and Appellant.

COUNSEL

Norman W. Gordon for Defendant and Appellant.

John D. Maharg, County Counsel, and Kenneth E. Reynolds, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**COMPTON, J.**—On March 4, 1969, the Board of Trustees of the Compton Junior College District (hereinafter referred to as the Board) pursuant to Education Code sections 13403, 13404 and 13408, suspended defendant, a certificated teacher, from his employment with the Compton Junior

College District and notified him of the Board's intention to dismiss him after 30 days. The suspension and dismissal were based upon charges of immoral conduct and evident unfitness for service as provided by section 13403 of the Education Code.[1] Defendant demanded a hearing as provided for in the statutes. Although not required by the code to do so, the Board held an informal hearing, at which defendant and his counsel were present, and heard evidence concerning the charges. Subsequently, pursuant to section 13412[2] of the Education Code, the Board filed a complaint in the superior court requesting that the court inquire into the charges made against defendant and determine whether or not those charges were true, and if true, whether or not the charges constituted sufficient grounds for the dismissal of defendant. The court found that the charges against defendant were true and were sufficient basis for the Board's dismissal of defendant.

Defendant appeals from the judgment and from the denial of a motion to vacate the judgment under Code of Civil Procedure section 663. In addition, defendant purports to appeal from the trial court's overruling of a demurrer and denial of a new trial, both of which are nonappealable orders. (Code Civ. Proc., § 904.1.) The purported appeals therefrom are dismissed.

We note in passing, however, that as to the demurrer, the written charges and the informal hearing conducted by the Board fully apprised defendant of the nature of the charges.

Reduced to its simplest terms, defendant's contention on appeal is that the trial court erred as a matter of law in holding that defendant's conduct constituted sufficient grounds for dismissal.

Although there was some conflict in the evidence, the conduct in which

---

[1]Education Code section 13403 reads in pertinent part: "Grounds for dismissal of permanent employee. No permanent employee shall be dismissed except for one or more of the following causes: (a) Immoral or unprofessional conduct. . . . (e) Evident unfitness for service."

[2]Education Code section 13412: "Action of governing board after demand for hearing. When any employee, who has been served with notice of the governing board's intention to dismiss him demands a hearing, the governing board shall have the option either (a) to rescind its action, or (b) to file a complaint in the superior court of the county in which the school district or the major part thereof is located, setting forth the charges against the employee and asking that the court inquire into the charges and determine whether or not the charges are true, and if true, whether or not they constitute sufficient grounds for the dismissal of the employee, under the provisions of this code, and for judgment pursuant to its findings."

the trial court found the defendant to have engaged was amply established by competent testimony.

That conduct viewed objectively as well as when viewed in the light of logical inferences to be drawn therefrom was unquestionably, as we shall see, well within even the most restricted definition of "immoral conduct" as that term is used generally or as it is used in Education Code section 13403.

The evidence of defendant's conduct which the trial court found to be true, a finding which is not assailed by defendant on appeal, can be briefly summarized as follows.

After teaching a class on the night of January 28, 1969, defendant drove a female student, and member of that class, in his car to a location on a side street near Compton College and parked. The location is in an area of industrial construction and was not lighted.

At some time after defendant parked, a Los Angeles County Deputy Sheriff spotted defendant's car. The car appeared to the deputy to be abandoned and he went to investigate. When the deputy illuminated defendant's car with his headlights and searchlight, defendant then sat up. When the deputy approached defendant's car, illuminating the interior with his flashlight, he observed that defendant's pants were unzipped and lowered from the waist, exposing his penis. The student was nude from the waist up, and her capri pants were unzipped and open at the waist.

The deputy orally identified himself as a police officer. In addition, he was wearing a yellow raincoat with a badge on the chest and a helmet bearing a sheriff's emblem. Defendant recognizing that the deputy was a police officer, threw open the left car door, nearly striking the deputy, and shouted, "Get the hell away from me, you dirty cop."

As the deputy was standing behind the still open left door, defendant shifted the car into reverse, accelerated rapidly backward, knocking the deputy to the pavement and causing minor injuries to the deputy and damage to his clothing.

Defendant then drove away. The deputy pursued defendant in his patrol car with his red lights flashing, and his siren and searchlight on; during the chase defendant drove at speeds between 80 and 100 miles per hour and refused to yield until the student, by persuasion and by attempting to force the steering wheel to the right, caused defendant to stop.

The legislative scheme for discharging permanent employees of a school district essentially gives the governing board in the first instance the power to suspend and discharge or retain such employee against whom charges

have been made under the applicable provisions of section 13403 of the Education Code. When the employee demands a hearing, the board can either rescind its action or ask the superior court to conduct such hearing. Thus, in these cases the court conducts what in other areas of the civil service would be an administrative hearing.

Whether this rather unique procedure amounts to superior court review of an administrative determination, or an ordinary decision of the superior court, the scope of our review is the same. (See *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20].) We must determine only whether the findings and conclusions of the trial court, as a matter of law, lack support in the record.

■ "Although a public employee has no constitutional right to his position, he cannot be barred or removed arbitrarily. [Citations.] Action is arbitrary . . . when the facts do not reasonably justify the conclusion. [Citations.]" (*Hollon* v. *Pierce,* 257 Cal.App.2d 468, 478 [64 Cal.Rptr. 808].)

■ Thus, we turn to the court's conclusion that the defendant's conduct here was sufficient grounds for suspension and dismissal.

" '. . . [T]he calling [of a teacher] is so intimate, its duties so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment. . . . His habits, his speech, his good name, his cleanliness, the wisdom and propriety of his unofficial utterances, his associations, all are involved. His ability to inspire children and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention.' " (*Board of Education* v. *Weiland,* 179 Cal.App.2d 808 [4 Cal.Rptr. 286], citing from *Goldsmith* v. *Board of Education,* 66 Cal.App. 157, 168 [225 P. 783].)

There are certain professions which impose upon persons attracted to them, responsibilities and limitations on freedom of action which do not exist in regard to other callings. Public officials such as judges, policemen and schoolteachers fall into such a category.

As between a teacher and his student, "[a]n important part of the education . . . is the instilling of a proper respect for authority and obedience to necessary discipline. Lessons are learned from example as well as from precept." (*Johnson* v. *Taft School Dist.,* 19 Cal.App.2d 405, 408 [65 P.2d 912].) And as our Supreme Court said in *Board of Education* v. *Swan,* 41 Cal.2d 546 at p. 552 [261 P.2d 261], "A teacher . . . in the public school system is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the [students] coming under [his] care and protection."

It would seem that, as a minimum, responsible conduct upon the part of a teacher, even at the college level, excludes meretricious relationships with his students and physical and verbal assaults on duly constituted authorities in the presence of his students.

Defendant quickly calls to our attention the recent pronouncement of our Supreme Court in *Morrison* v. *State Board of Education,* 1 Cal.3d 214, at p. 217 [82 Cal.Rptr. 175, 461 P.2d 375].

In that case the court held that the revocation of a teaching credential upon grounds of "immoral and unprofessional conduct and acts involving moral turpitude" could not be supported by evidence limited to a showing that on one occasion three years in the past, while under severe stress, the teacher had engaged in an undescribed but noncriminal private act "of a homosexual nature" with a consenting adult. The court concluded that, ". . . the State Board of Education can revoke a life diploma or other document of certification and thus prohibit local school officials from hiring a particular teacher only if that individual has in some manner indicated that he is unfit to teach. Thus an individual can be removed from the teaching profession only upon a showing that his retention in the profession poses a significant danger of harm to either students, school employees, or others who might be affected by his actions as a teacher." (*Morrison, supra,* at p. 235.)

Defendant contends that *Morrison* prohibits his discharge because the evidence adduced against him concerned only his conduct and did not expressly demonstrate how that conduct rendered him unfit to teach. We do not agree with defendant's broad interpretation of that case.

*Morrison* does not appear to substantially alter the fundamental considerations traditionally applied to cases involving the dismissal of a teacher or the revocation of a teacher's credential for "immoral conduct." Consistent with previous cases,[3] the court in its analysis of the conduct placed paramount importance on the *possible* impairment of teaching ability and relationships with students and clearly recognized the power of governmental employers to maintain proper discipline in the particular governmental service.

"*Morrison* thus seems to be a narrow decision, limited to its facts, and one decided primarily upon a disinclination of the majority of the court to permit judicial notice by the administrative agency or the trial court of the possibility that a man who had engaged in the conduct of the petitioner in

---

[3]See for example: *Board of Education* v. *Swan,* 41 Cal.2d 546 [261 P.2d 261]; *Board of Education* v. *Weiland,* 179 Cal.App.2d 808 [4 Cal.Rptr. 286].

that case might repeat it so as to render him unfit to teach." (*Alford* v. *Department of Education,* 13 Cal.App.3d 884, 889 [91 Cal.Rptr. 843].)

Substantial factual distinctions exist between *Morrison* and the instant case in terms of the lapse of time between the conduct and the discharge, the locales where the conduct occurred and the status of the parties involved.

Another substantial difference is that between the *revocation of a teacher's certificate* and dismissal from employment in a single school district. Thus the court stressed that a teacher "is entitled to a careful and reasoned inquiry into his fitness to teach by the Board of Education *before he is deprived of his right to pursue his profession.*" (Italics added.) (*Morrison, supra,* at pp. 238-239.)

In the instant case defendant was charged under section 13403 et seq. of the Education Code. Under this statute defendant cannot be deprived of his right to pursue his profession, indeed, the only sanction to be imposed on defendant under section 13403 is *dismissal* from his job in the Compton Junior College District and *not* revocation of his teaching credential.

However, it seems clear from the language in *Morrison* that the same test applies to either situation.

Thus a nexus between the defendant's conduct and his usefulness to the school district was a necessary condition of his discharge under Education Code section 13403. Such a finding was inherent in the trial court's conclusion that the conduct constituted sufficient grounds for discharge.

Returning to *Morrison,* at page 236, we note that the court there was critical of the lack of *psychiatric or other evidence* to establish (1) "[t]hat a man of petitioner's background was any more likely than the average adult male to engage in any *untoward conduct with a student*" (italics added), or (2) that publicity surrounding his conduct adversely affected his ability to teach.

The clear import of that decision, then, is that a teacher may be discharged or have his certificate revoked on evidence that either his conduct indicates a potential for misconduct with a student or that his conduct while not necessarily indicating such a potential, has gained sufficient notoriety so as to impair his on-campus relationships.

There is no requirement that both the potential and the notoriety be present in each case.

While in this case no evidence was offered which directly dealt with notoriety, the very fact that a police officer, in the course of his official duties, easily discovered defendant and his companion, demonstrates the

tenuous security from public attention provided by the front seat of defendant's automobile. Moreover, upon detection, defendant chose to assault the police officer and attempt an escape through dark city streets at high speeds, thereby ultimately insuring further public attention.

Finally, "unfitness to teach" in terms of an indication that defendant was "more likely than the average adult male to engage in any untoward conduct with a student" can be inferred from the very conduct itself. Defendant's actions in this case speak louder than any words of a psychiatrist. The potential, evidence of which was found lacking in *Morrison,* was overtly manifested here.

The integrity of the educational system under which teachers wield considerable power in the grading of students and the granting or withholding of certificates and diplomas is clearly threatened when teachers become involved in relationships with students such as is indicated by the conduct here.

The findings and conclusions of the trial court are amply supported by the record. However, in order to eliminate any uncertainty in the record, we resort to our authority under section 909 of the Code of Civil Procedure and make the specific finding that the conduct of the defendant in this case constitutes immoral conduct which indicates unfitness to teach. We further find that the conduct here indicates evident unfitness for service under the provisions of section 13403 of the Education Code.

The judgment is affirmed. The purported appeals from the orders overruling a demurrer and denying a new trial are dismissed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied May 13, 1971, and appellant's petition for a hearing by the Supreme Court was denied June 17, 1971.