[No. D057740. Fourth Dist., Div. One. Apr. 4, 2011.]

SAN DIEGO UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v. COMMISSION ON PROFESSIONAL COMPETENCE, Defendant and Respondent;
FRANK LAMPEDUSA, Real Party in Interest and Respondent.

**Counsel**

Jose A. Gonzales and Mark Bresee for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Tosdal, Smith, Steiner & Wax and Fern Steiner for Real Party in Interest and Respondent.

Opinion

**NARES, Acting P. J.**—Frank Lampedusa, a tenured teacher with the San Diego Unified School District (District) and the real party in interest in the matter, appealed his notice of termination as a permanent certificated teacher by the District to the respondent Commission on Professional Competence (Commission). The District based Lampedusa's dismissal upon the allegation that he showed evident unfitness for service under Education Code[1] section 44932, subdivision (a)(5); immoral conduct under section 44932, subdivision (a)(1); and persistent refusal to follow State Board of Education guidelines or the law under section 44932, subdivision (a)(7). Specifically, the District's notice of termination was based upon Lampedusa's posting on craigslist of an ad soliciting sex that contained graphic photos of his genitalia and anus, as well as obscene written text, that was discovered by a parent and reported to the District. The District has not appealed the findings related to the persistent violations of law allegation under section 44932, subdivision (a)(7) here, nor did they in the trial court.

The Commission determined that cause for the dismissal did not exist and reinstated Lampedusa's employment with the District. The District filed a petition for writ of mandate with the Superior Court of San Diego County. The court denied the petition, finding the District failed to show the Commission's findings were not supported by the weight of the evidence.

■ The District appeals, again asserting there was no substantial evidence to support the Commission's reinstatement of Lampedusa regarding the charges of immoral conduct and evident unfitness. We conclude that there is no substantial evidence to support the Commission's decision as the evidence shows both evident unfitness to serve as a teacher and that Lampedusa engaged in immoral conduct, either of which constituted grounds for termination. Accordingly, we reverse the judgment. The superior court is directed to issue a writ of mandate instructing the Commission to set aside its decision finding cause did not exist to terminate Lampedusa's employment and render a decision, consistent with this opinion, finding Lampedusa's conduct constituted grounds for dismissal based upon his evident unfitness to teach and his immoral conduct.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Lampedusa's Employment with the District*

Lampedusa has been a teacher in the District since 1999. In 2004 Lampedusa began at Jean Farb Middle School (Farb), which included grades

---

[1] All further statutory references are to the Education Code unless otherwise specified.

six through eight, as a staff developer in literacy. The following year, he was appointed to the position of dean of students, an administrative position, by Principal Susan Levy. As dean of students, Lampedusa handled disciplinary issues with students, formed relationships with students to support those struggling with behavior, met with parents, and coordinated with teachers and staff to help students. According to Principal Levy, Lampedusa "did a good job" and "[was] professional." Principal Levy noted success in dealing with students because "kids [were] not repeating offenses." There had even been talks of Lampedusa being a candidate for a vice-principal position.

B.  *The Misconduct*

On June 22, 2008, Monica Melero, a District police dispatcher, received a call from an anonymous male who identified himself as the parent of a student at Farb. The caller stated that he had received a call from a friend, also anonymous, telling him that the dean of students at his child's school had a listing on craigslist's "men seeking men" Web page soliciting sex. The caller then walked Melero through the steps in order to find Lampedusa's listing. It was titled "Horned up all weekend and need release" and contained the following text: "In shape guy, masc, attractive, 32 waist, swimmer's build, horny as fuck. Looking to suck and swallow masc guys, also looking to get fucked. Uncut and huge shooters jump to head of line. Give my [*sic*] your loads so I can shoot mine. White, black, Hispanic, European, all good. No fats, fems, queens, asians. NO BELLIES. Have pics when you email."

The ad also contained four pictures of Lampedusa: the first of his face, torso and abdomen, the second of his anus, the third of his genitalia, and the fourth of his face and upper torso. The listing did not contain Lampedusa's name, contact information, profession, or any mention of his employment by the District or Farb.

The "men seeking men" section of the craigslist Web site where the listing was posted contains a disclaimer requiring agreement, among other things, that "I am at least 18 years old" and "I understand 'men seeking men' may include adult content." The disclaimer requires users to click before entry into the site. In order to respond to the listing a user would have had to send an e-mail to craigslist, and a private anonymous e-mail would then have been sent to Lampedusa.

After viewing the listing, Melero reported it to Detective Doris Devowe who directed her to print it out along with the pictures. The listing was later admitted as evidence at the hearing. Detective Devowe, in turn, informed Rich Cansdale, who was the Area 3 superintendent overseeing 31 schools within the District, including Farb, about Lampedusa's listing. Detective

Devowe described the listing to Cansdale, but Cansdale never actually saw the listing. Cansdale reported the ad to Farb's principal, Levy, who later viewed the ad.

### C. *Notice of Suspension and Intention to Dismiss*

Cansdale called Lampedusa while he was at Farb and suggested that he remove the listing. Lampedusa agreed and immediately left the school in order to go home and remove the listing. The listing was up for approximately two days. Later that evening, Lampedusa searched the Internet further and took steps to ensure there was no other link to the listing or any other information on the Internet that would tie him to it.

Lampedusa continued to work at Farb after the anonymous call on June 22, 2008, until July 17, 2008, without incident, until he was placed on administrative leave. On November 10, 2008, Lampedusa was served with a notice of suspension, intention to dismiss and with dismissal charges alleging evident unfitness for service under section 44932, subdivision (a)(5); immoral conduct under section 44932, subdivision (a)(1); and persistent refusal to follow board guidelines or the law under section 44932, subdivision (a)(7).

### D. *The Hearing and Commission's Decision*

Lampedusa requested a hearing before the Commission to contest the dismissal charges before a three-person panel.

Lampedusa testified that he placed the listing in order to meet somebody for sexual relations. He included the explicit narrative and the pictures because he wanted people to be clear as to what he looked like, what his personal preferences were, and what his interest was. Lampedusa maintains that he did not intend for any student to view the Web site, and he thought the listing would be adult and private. He also testified that he never used school time, equipment or resources in connection with the listing.

However, he testified he thought it was the responsibility of parents and students to not access his ad: "I would assume parents are taking their responsibilities to monitor children and what they're doing on the Internet. I would assume that students are doing the right thing if they come across something that says that you shouldn't have access, that they don't access it." Lampedusa also testified "fundamentally I don't believe what I did was . . . immoral . . . ." However, he acknowledged that educators at his school would be uncomfortable with what he did. He also stated that if his students had seen the ad he did not believe "there would be a significant impact at all" on his ability to teach them.

Lampedusa testified he had previously posted five or six ads soliciting sex on the Internet, including craigslist. Some of the ads may have included the same photographs that were in the present one. He also acknowledged that he would continue to place ads soliciting sex, but that he would be "censoring . . . things a lot more effectively. I might put a picture on there, but it certainly would not be anything that people would necessarily object to."

Principal Levy testified that based upon the ad, which she viewed, she had lost confidence in Lampedusa and questioned his ability to serve as a role model for students as either the dean of students or as a teacher.

On June 12, 2009, the Commission issued its decision finding "respondent's conduct in placing this sexually explicit ad was vulgar and inappropriate and demonstrated a serious lapse in good judgment . . ." and "strongly condemns [Lampedusa's] behavior." Nonetheless, the Commission concluded "the District failed to prove any nexus whatsoever to respondent's employment with the District." The Commission found the evidence (1) did not establish Lampedusa was unfit to teach by reason of a temperamental defect and (2) did not establish that Lampedusa engaged in immoral conduct such that he is unfit to teach.

In reaching its decision the Commission noted that, "[h]ad any student, parent, or teacher viewed respondent's ad, it surely would have washed over into his professional life and interfered with his ability to serve as a role model at school. However, that simply never happened in this case."

The Commission stated: "There is little likelihood that [Lampedusa's] conduct adversely affected students or fellow teachers since none of them learned of the incident and, therefore, there was no notoriety associated with the incident. The degree of the adverse affect, had anyone learned of the incident, could certainly have been anticipated, but respondent never expected anyone at school would learn of his ad since it was on an adults-only site and he did not list his name or his employment. The conduct occurred nearly one year ago. There was no evidence of aggravating circumstances surrounding respondent's conduct, but there was evidence of mitigation since respondent immediately and willingly removed the ad from the internet when notified of the problem. Respondent's motive here was to meet someone in his personal life for the purpose of engaging in a sexual relationship. This is neither praiseworthy nor blameworthy, although respondent is now more mindful of how his actions in his private life can inadvertently affect his public life as a teacher. There is little likelihood that this type of conduct will recur since respondent understands he made a mistake and has learned from it. There was no evidence presented to establish whether this disciplinary action would have any adverse impact or chilling effect on the constitutional rights of teachers."

E.   *Petition for Writ of Mandate Filed by the District*

The District filed a petition for writ of mandate with the Superior Court of San Diego County. The District challenged the Commission's decision alleging it abused its discretion and that the weight of the evidence did not support a dismissal of the charges.

The trial court adopted the Commission's findings of fact and conclusions of law. The court found that the weight of the evidence supported the Commission's findings, stating, "Lampedusa's conduct did not affect students or other teachers, and by all accounts he was a competent teacher and Dean of Students." Thus, the court denied the writ of mandate filed by the District.

## DISCUSSION

### I.   *STANDARD OF REVIEW*

Code of Civil Procedure section 1094.5 provides a trial court reviewing the decision of an administrative agency exercises its independent judgment in reviewing the evidence and that an "abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (Code Civ. Proc., § 1094.5, subd. (c).) Under the independent review standard, the trial court may weigh the credibility of witnesses. (*Pittsburg Unified School Dist. v. Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 977 [194 Cal.Rptr. 672] (*Pittsburg*).)

"After the superior court makes an independent judgment upon the record of an administrative proceeding, [the] scope of review on appeal is limited." (*San Dieguito Union High School Dist. v. Commission on Professional Competence* (1985) 174 Cal.App.3d 1176, 1180 [220 Cal.Rptr. 351] (*San Dieguito*).) We must sustain the trial court's findings if they are supported by substantial evidence. (*Pittsburg, supra,* 146 Cal.App.3d at p. 978.) In reviewing the evidence, we resolve all conflicts in favor of the party prevailing at the trial court level and must give that party the benefit of every reasonable inference in support of the judgment. " ' "When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court." ' " (*Governing Board v. Haar* (1994) 28 Cal.App.4th 369, 378 [33 Cal.Rptr.2d 744].)

The trial court adopted as its statement of decision the Commission's finding of fact and conclusion of law. Accordingly, the issue in this appeal is whether the Commission's finding, adopted by the trial court, is supported by substantial evidence. If there is substantial evidence, the judgment must be affirmed. (*San Dieguito, supra,* 174 Cal.App.3d at p. 1180.) We do not

reweigh the evidence. Our inquiry "begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Perez v. Commission on Professional Competence* (1983) 149 Cal.App.3d 1167, 1176 [197 Cal.Rptr. 390].)

## II.  *ANALYSIS*

### A.  *Evident Unfitness to Serve*

The District asserts that there is no substantial evidence to support the Commission's conclusion that Lampedusa was fit to serve as a teacher. We conclude that there is no substantial evidence to support the Commission's decision as the evidence showed an evident unfitness to serve as a teacher, which constituted adequate grounds for termination.

██ Section 44932, subdivision (a)(5) provides that a permanent employee of a public school district may be dismissed for evident unfitness for service. In the context of a teacher, " 'evident unfitness for service' . . . means 'clearly not fit, not adapted to or unsuitable for teaching, ordinarily by reason of temperamental defects or inadequacies.' Unlike 'unprofessional conduct,' 'evident unfitness for service' connotes a fixed character trait, presumably not remediable merely on receipt of notice that one's conduct fails to meet the expectations of the employing school district." (*Woodland Joint Unified School Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429, 1444 [4 Cal.Rptr.2d 227], fn. omitted.)

██ In *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375] (*Morrison*), our Supreme Court articulated factors relevant to a determination of a teacher's unfitness to teach as follows: (1) "the likelihood that the conduct may have adversely affected students or fellow teachers [and] the degree of such adversity anticipated"; (2) "the proximity or remoteness in time of the conduct"; (3) "the type of teaching certificate held by the party involved"; (4) "the extenuating or aggravating circumstances, if any, surrounding the conduct"; (5) "the praiseworthiness or blameworthiness of the motives resulting in the conduct"; (6) "the likelihood of the recurrence of the questioned conduct"; and (7) "the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." (*Id.* at p. 229, fns. omitted.) "These factors are relevant to the extent that they assist the board in determining whether the teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the [school district's] standards." (*Id.* at pp. 229–230.)

To establish a teacher is unfit to teach, *Morrison* requires a nexus between government employment and alleged employee misconduct stemming from the principle that "[n]o person can be denied government employment because of factors unconnected with the responsibilities of that employment." (*Morrison, supra,* 1 Cal.3d at p. 234.)

### 1. *Adverse affect on students or teachers*

A teacher may be discharged where his conduct "has gained sufficient notoriety so as to impair his on-campus relationships." (*Board of Trustees v. Stubblefield* (1971) 16 Cal.App.3d 820, 826 [94 Cal.Rptr. 318].)

Contrary to the Commission's findings, a parent and an educator *did* see the ad. The parent who complained viewed the ad and even walked the police dispatcher through the Web site to show her how to view the ad. Principal Levy also viewed the ad. Principal Levy testified that based upon Lampedusa's conduct she had lost confidence in Lampedusa's ability to serve as a role model for students. This evidence is substantial evidence of an adverse impact on Lampedusa's on-campus relationships. Indeed, even the Commission noted that had a parent or educator viewed the ad "it surely would have washed over into his professional life and interfered with his ability to serve as a role model at school." However, inexplicably the Commission stated "that simply never happened in this case." The Commission ignored the evidence that a parent and an educator *did* view the ad. Thus, the evidence established Lampedusa's conduct interfered with his ability to serve as a role model at school. Principal Levy's testimony, combined with the graphic, pornographic nature of the ad, provided substantial evidence that his relationship with her had been sufficiently impaired to render him unfit for service as a teacher or administrator.

" ' "[T]he calling [of a teacher] is so intimate, its duties so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment. . . . His ability to inspire children and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention." ' [Citation.] [¶] There are certain professions which impose upon persons attracted to them, responsibilities and limitations on freedom of action which do not exist in regard to other callings. Public officials such as judges, policemen and schoolteachers fall into such a category. [¶] . . . And as our Supreme Court said in *Board of Education* v. *Swan* [(1953)] 41 Cal.2d 546[,] 552 [261 P.2d 261][, overruled on other grounds in *Bekiaris v. Board of Education* (1972) 6 Cal.3d 575, 588, footnote 7 [100 Cal.Rptr. 16, 493 P.2d 480]], 'A teacher . . . in the public school system is regarded by the public and pupils in the light of an

exemplar, whose words and actions are likely to be followed by the [students] coming under [his] care and protection.' " (*Board of Trustees v. Stubblefield, supra*, 16 Cal.App.3d at p. 824.)

### 2. *Proximity or remoteness in time of the conduct*

Applying this factor, the Commission noted that the ad had been placed nearly one year before the hearing. However, this fact does not support the Commission's decision. The ad was placed in late June 2008. Lampedusa was served with dismissal charges on November 10, 2008. Dismissal charges cannot be served on a teacher between May 15 and September 15. (§ 44936.) Thus, the District promptly served Lampedusa with the charges, and the conduct was not remote in time.

### 3. *Type of teaching certificate held by teacher*

Lampedusa holds a secondary school credential in social science and a supplemental in English that allow him to teach in middle school. He also holds an administrative services credential. Lampedusa's public posting of his pornographic ad is inconsistent with teaching middle school students and serving as an administrator. No evidence weighs against the District's decision under this factor.

### 4. *The extenuating or aggravating circumstances surrounding the conduct*

The Commission erred in finding there was "no evidence of aggravating circumstances surrounding [Lampedusa's] conduct." This finding ignores the fact Lampedusa posted graphic, pornographic photos, and obscene written material, on a Web site open to the public. Lampedusa admitted that he had posted similar ads in the past and did not believe he had done anything immoral. Moreover, rather than taking complete responsibility for his conduct, he shifted responsibility to parents and students to not access the site.

Further, while it is true that he promptly removed the ad after being directed to do so, it does not mitigate his conduct that would have likely continued had a parent not viewed and complained about the ad. This factor also does not support the Commission's decision.

### 5. *Praiseworthiness or blameworthiness of the motive*

While Lampedusa's conduct may not have been blameworthy in the sense he was seeking a date, it was extremely blameworthy in the pornographic, obscene manner that he did so. This factor also does not support the Commission's decision.

### 6. *Likelihood of recurrence of the conduct*

This factor also does not support the Commission's decision. Lampedusa had previously posted five or six ads soliciting sex on the Internet, some with the same photographs that were in the present ad. And although he stated he would not place the same type of material again, he indicated he would continue to post ads soliciting sex. Further, Lampedusa testified he did not believe he had done anything immoral and was unwilling to accept responsibility for any parent or student viewing the ad. These facts, along with Lampedusa's serious lack of judgment in posting obscene, pornographic solicitations for sex in the past can give the District little comfort that the conduct will not recur.

### 7. *Chilling effect on constitutional rights of teachers*

The Commission found that there was "no evidence presented to establish whether this disciplinary action would have any adverse impact or chilling effect on the constitutional rights of teachers." However, United States Supreme Court authority establishes the disciplinary action taken by the District did not have an adverse impact or chilling effect on Lampedusa's constitutional rights.

In *San Diego v. Roe* (2004) 543 U.S. 77 [160 L.Ed.2d 410, 125 S.Ct. 521], the city terminated a police officer for his off-duty selling of sexually explicit videos of himself on eBay. The videos and video ads did not identify the officer by name, the city, or his employment by the city. The high court not only found that the officer's rights to freedom of speech were not violated, it also found his conduct was "detrimental to the mission and functions of the [city] employer." (*Id.* at p. 84.)

Thus, it is established that disciplining Lampedusa for publicly posting his ad does not infringe on his constitutional rights or the rights of other teachers.

### 8. *Nexus between conduct and ability to teach*

The nexus between Lampedusa's conduct and his fitness to teach has been established. It is evident that his conduct was "detrimental to the mission and functions of [his] employer." (*City of San Diego v. Roe, supra,* 543 U.S. at p. 84.) The posting on a public Web site of his genitals and anus, accompanied by sexually explicit text, was, in the words of the Commission itself, vulgar, inappropriate and demonstrated a serious lapse in good judgment. He also failed to recognize the seriousness of his misconduct, and attempted to shift blame to parents and students who might access his ad. Principal Levy had lost confidence in his ability to serve as a role model based upon the

posting. Most noteworthy is the fact he testified that he did not think it would have any impact on his ability to teach his students if any of them had viewed the ad and that he did not view his posting of the ad as immoral. The conduct itself, together with Lampedusa's failure to accept responsibility or recognize the seriousness of his misconduct given his position as a teacher and role model, demonstrates evident unfitness to teach.

### B. *Immoral Conduct*

■ A teacher may also be dismissed for "[i]mmoral or unprofessional conduct." (§ 44932, subd. (a)(1).) " 'The term "immoral" has been defined generally as that which is hostile to the welfare of the general public and contrary to good morals. Immorality has not been confined to sexual matters, but includes conduct inconsistent with rectitude, or indicative of corruption, indecency, depravity, dissoluteness; or as wilful, flagrant, or shameless conduct showing moral indifference to the opinions of respectable members of the community, and as an inconsiderate attitude toward good order and the public welfare.' " (*Board of Education v. Weiland* (1960) 179 Cal.App.2d 808, 811 [4 Cal.Rptr. 286].) Moreover, the definition of immoral or unprofessional conduct must be considered in conjunction with the unique position of public school teachers, upon whom are imposed "responsibilities and limitations on freedom of action which do not exist in regard to other callings." (*Board of Trustees v. Stubblefield, supra,* 16 Cal.App.3d at p. 824.)

The public posting on a Web site of pornographic photos and obscene text constitute immoral conduct in that it evidences "indecency" and "moral indifference." Thus, the District's decision to terminate Lampedusa was also supported on this ground.

For all the foregoing reasons, the judgment of the superior court must be reversed and the District's writ of mandate granted.

### DISPOSITION

The judgment is reversed. The superior court is directed to issue a writ of mandate instructing the Commission to set aside its decision finding cause did not exist to terminate Lampedusa's employment and render a decision,

consistent with this opinion, finding Lampedusa's conduct constituted grounds for dismissal based upon his evident unfitness to teach and his immoral conduct.

O'Rourke, J., and Irion, J., concurred.