Filed 2/10/22  Smith v. Cal. State Personnel Board CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| T. FITZGERALD SMITH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA STATE PERSONNEL BOARD,<br><br>    Defendant and Respondent;<br><br>CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,<br><br>    Real Party in Interest and Respondent. | E074300<br><br>(Super. Ct. No. CIVDS1908082)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br>[NO CHANGE IN JUDGMENT] |

Appellant T. Fitzgerald Smith's petition for rehearing is denied.  The opinion filed in this matter on January 24, 2022, is modified as follows:

The following footnote is added to at the end of the last sentence in section IV.B. of the opinion:

1

"In his reply brief, Smith argues the SPB lacked jurisdiction and violated his due process rights. Smith forfeited these arguments by failing to raise them in his opening brief. (See *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1318 [city forfeited argument that agency lacked jurisdiction by raising the issue only in its reply brief]; *H.N. & Frances C. Berger Foundation v. City of Escondido* (2005) 127 Cal.App.4th 1, 15 [party forfeited due process argument raised for first time in reply brief].)"

Except for this modification, the opinion remains unchanged. This modification does not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.

cc: See attached mailing list

MAILING LIST FOR CASE: E074300
T. Fitzgerald Smith v. California State Personnel Board; California Unemployment Insurance Appeals Board

Superior Court Clerk
San Bernardino County
8303 N. Haven Ave
Rancho Cucamonga, CA 91730


Leland P. McElhaney
Brunick, McElhaney & Kennedy
1839 Commercenter West
P.O. Box 13130
San Bernardino, CA 92423-3130


Chian He
State Personnel Board
801 Capitol Mall, #MC53
Sacramento, CA 95814-4806


Hima Raviprakash
Office of the Attorney General
1515 Clay Street, 20th Floor
PO Box 70550
Oakland, CA 94612

Filed 1/24/22  Smith v. Cal. State Personnel Board CA4/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| T. FITZGERALD SMITH,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA STATE PERSONNEL BOARD,<br><br>      Defendant and Respondent;<br><br>CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,<br><br>      Real Party in Interest and Respondent. | E074300<br><br>(Super. Ct. No. CIVDS1908082)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge

Affirmed.

Brunick, McElhaney & Kennedy and Leland P. McElhaney, for Plaintiff and

Appellant.

1

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Fiel D. Tigno and Hima Raviprakash, Deputy Attorneys General, for Real Party In Interest and Respondent.

No appearance by Defendant and Respondent.

I.

INTRODUCTION

Appellant T. Fitzgerald Smith was an Administrative Law Judge (ALJ) for the California Unemployment Insurance Appeals Board (the Board). While presiding over a hearing involving alleged workplace sexual harassment, Smith made comments that he concedes were inappropriate. In response to a complaint about Smith's comments, the Board terminated him. The State Personnel Board (the SPB) upheld his termination, as did the trial court.

Smith appeals. He does not dispute that his inappropriate comments warranted discipline, but he argues his dismissal was too harsh a penalty. We conclude the SPB did not abuse its discretion in finding that Smith's dismissal was appropriate. We therefore affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

The Employment Development Department (EDD) denied Enrique Sandoval's claim for unemployment benefits because he was terminated for allegedly sexually

2

harassing a coworker, Lopez. Smith, who had been an ALJ for about nine years, presided over Sandoval's appeal of the EDD's decision.

At a hearing on the matter, Sandoval's employer's head of human resources, Jeff Stumbo, testified about his investigation into Sandoval's alleged harassment. Stumbo testified that Sandoval made several unwelcome advances on Lopez, tried to kiss her, encouraged her to meet him at a hotel, and texted her repeatedly. Lopez feared for her safety because of Sandoval's behavior.

Sandoval's attorney, Nathan Kased, cross-examined Stumbo. During his cross-examination, Kased asked Stumbo about Lopez's appearance and her relationship with Sandoval. The following colloquy between Kased and Stumbo took place:

"KASED: Your definition - you know again, the - the [employee] handbook that I felt was a little blurry; is romantic relationship defined in the handbook anywhere?

"STUMBO: The word romantic I doubt is in there, but sexual harassment - unwelcome verbal, physical, and visual conduct that is based on particular characteristics and interferes with work performance constitutes harassment that's prohibited by this policy. And - then if you're looking - I'm looking at Exhibit 13-1 and 2, which defines harassment.

"KASED: Yeah, I-I believe you. I mean, that's the standard doctrine of the definition of - of sexual harassment or misconduct, unwelcome over a period of time. I get that part. In terms of romantic relations - anything defined in that regard?"

3

Smith then interjected: "I'm not so naive as to think that romance is hearts, flowers, candy on - on Mother's Day. Romantic means we're gonna go somewhere and have sex; that's what romantic means in the modern context."

Kased continued his cross-examination, and Smith again interjected with comments that are the subject of this appeal:

"KASED: I - I felt otherwise, but - but that seems to be a pretty blunt statement.

"[SMITH]: No, I-I-I-I don't believe it has any other connotation.

"KASED: Okay. That's fine, your Honor; I'll move on. Mr. Stumbo, have you ever met Lopez in person?

"STUMBO: Yes.

"KASED: Okay. And you've seen what she looks like, correct?

"STUMBO: I know what she looks like, yes.

"KASED: Okay. And can you describe her a little bit.

"STUMBO: What's the purpose of that?

"KASED: Her appearance. It's – it's relevant. Can you describe it?

"STUMBO: Latina, female, long hair.

"KASED: Okay. Is she overweight?

"STUMBO: Yes, she is.

"KASED: A couple hundred pounds?

"STUMBO: Oh, I don't know about that. I don't – I don't have any idea what she weighs.

"KASED: Okay. Do you find – do you think she's an attractive woman, objectively speaking?

"STUMBO: I – I don't understand this line of questioning, your Honor.

"[SMITH]: Well, I do.

"KASED: I'm just asking . . .

"[SMITH]: It – it - it's a question. It's fair. Is – is Ms. Lopez a person that would be considered you know, an eight as opposed to a two? (Laughter.) . . . .

[¶]

"STUMBO: I mean she's, I think several people probably do find her attractive. She clearly has a long-term boyfriend and a - a one-year-old daughter. Do I find her personally attractive? No.

"KASED: No. But – and she's overweight, correct?

"SMITH: Well if she just had a baby she would be. You know, let's give her the benefit of that doubt."

Stumbo's employer filed a formal complaint against Smith for his comments during the hearing. In response, Smith sent a letter to the Presiding ALJ. Smith acknowledged that he "may have committed an error," but had not had the "opportunity to defend or explain [his] actions." Smith explained that "anticipated several defenses coming from [Sandoval's] attorney" and thus thought his questions were necessary to elicit testimony from Stumbo relevant to Sandoval's defenses. Smith claimed his "asking a clearly offensive question was an attempt to wake up the spokesperson for the employer

5

[Stumbo] and to develop the record." Smith thus intended for his questions to "pull answers" from Stumbo and "goad" him "to go to his memory and not just his notes."

The Board later terminated Smith. The Board reasoned that, as an ALJ, Smith was held to the California Code of Judicial Ethics "and its high standards of conduct." The Board explained that those standards mandated Smith to maintain "public confidence in the integrity and impartiality of the judiciary," and that he failed to do so during the Sandoval hearing. In particular, Smith failed to conduct "a fair, impartial, and dignified hearing" by making "irrelevant, prejudicial, and degrading" comments, which showed that he could not perform his duties as an ALJ.

Smith appealed the Board's decision to the SPB. An ALJ for the SPB, ALJ Teri L. Block, held an evidentiary hearing and issued a Proposed Decision in which she recommended that Smith be suspended for six months. Although the SPB adopted ALJ Block's findings of facts and conclusions of law in her Proposed Decision to the extent they were consistent with the SPB's decision, the SPB rejected ALJ Block's recommendation that Smith be suspended. Instead, the SPB found that Smith's dismissal was "just and proper." The SPB therefore upheld the Board's decision to dismiss Smith.

Smith filed a petition for a writ of mandate in superior court seeking to reverse the SPB's decision. The trial court denied the petition, and Smith timely appealed.

6

DISCUSSION

Smith does not deny his comments at the Sandoval hearing were inappropriate. Nor does not dispute that he should be disciplined for them. But he asserts that his dismissal was an improper, overly harsh penalty. We conclude the SPB did not abuse its discretion in finding that Smith's dismissal was appropriate.

A. *Standards of Review*

We review the SPB's factual findings for substantial evidence. (*Pollak v. State Personnel Board* (2001) 88 Cal.App.4th 1394, 1404.) Substantial evidence is "evidence 'of ponderable legal significance, . . . reasonable in nature, credible, and of solid value.'" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873, italics omitted.) In conducting our review for substantial evidence, we review the record in the light most favorable to the SPB. (*Pollak v. State Personnel Board*, *supra*, at p. 1404.)

"'[T]he determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.'" (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217 (*Skelly*).) "'In reviewing the exercise of this discretion we bear in mind the principle "[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . In determining whether an agency abused its discretion in assessing a particular penalty, a court will look to 'whether reasonable minds may differ as to the propriety of a penalty imposed.' [Citations.] Judicial interference with the agency's assessment of a penalty 'will only be

sanctioned when there is an arbitrary, capricious or patently abusive exercise of discretion by the administrative agency.'" (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 54.)  "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." (*Fout v. State Personnel Bd.* (1982) 136 Cal.App.3d 817, 821.)  On the other hand, we give no deference to the trial court's determination of whether the SPB abused its discretion. (*Pollak v. State Personnel Board*, *supra*, 88 Cal.App.4th at p. 1404.)

B. *Analysis*

Smith argues that the SPB was required to impose progressive discipline because he has no record of discipline.  To support his argument, he cites multiple precedential decisions from the SPB where progressive discipline was imposed for first-time offenders like him.  In his view, these decisions show that the SPB had to progressively discipline him before dismissing him because his single offense was not sufficiently "egregious" to warrant dismissal.

We disagree.  For one thing, none of the SPB decisions Smith relies on involved an ALJ.  (See *In re Watson* SPB Dec. No. 94-10, 1994 WL 16006541 (Deputy Labor Commissioner II); *In re R.N.* SPB Dec. No. 92-07 (Correctional Officer); *In re Virga* 1996 SPB Dec. No. 96-05 WL 33404983 (Data Processing Manager II); *In re Manayao* (1993) SPB Dec. No. 93-14 (School Facilities Program Analyst I).  Those decisions do not apply here because judicial officers, including ALJs, are held to a "higher standard" than other state employees. (*Ackerman v. State Personnel Board* (1983) 145 Cal.App.3d

8

395, 400 (*Ackerman*); see also *Board of Trustees v. Stubblefield* (1971) 16 Cal.App.3d 820, 824 ["There are certain professions which impose upon persons attracted to them, responsibilities and limitations on freedom of action which do not exist in other callings. Public officials such as judges, policemen, and school teachers fall into such a category."].) As the SPB noted in upholding the police officer's dismissal in *Ackerman*, his conduct "probably" would have warranted "some form of punishment less than dismissal if he was not a police officer," but his dismissal was appropriate because "a police officer must be held to a higher standard than other employees." (*Ackerman*, *supra*, at pp. 338-339.)

More to the point, "[w]hen it comes to a public agency's imposition of punishment, 'there is no requirement that charges similar in nature must result in identical penalties.'" (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 230.) The SPB was not "bound to deal with [Smith's case] in the same manner as it has dealt with past cases that might seem comparable." (*Grannis v. Board of Medical Examiners* (1971) 19 Cal.App.3d 551, 566; accord, *Marino v. City of Los Angeles* (1973) 34 Cal.App.3d 461, 466.) This is particularly true when, as here, the Board did not have a policy that mandated progressive discipline under the circumstances. (See *Kazensky v. City of Merced*, *supra*, 65 Cal.App.4th at p. 73.) "The question whether progressive discipline was appropriate in [Smith's] case was a matter within the [SPB's] discretion. (*Talmo v. Civil Service Com.*, *supra*, at p. 230.)

9

Smith contends that his dismissal was unwarranted because he is unlikely to repeat the inappropriate behavior and no one else had ever complained about him. Although it is undisputed no one had complained about Smith before the Sandoval hearing, substantial evidence supports the SPB's finding that he is likely to repeat his offending behavior.

ALJ Block found that Smith is likely to repeat his offending behavior because, in her view, Smith did not take "full responsibility for all of his misconduct," in particular his "crass definition of 'romance.'" During the evidentiary hearing, Smith argued that his comments about "romance" were misunderstood. He claimed that he was trying to explain that the Sandoval hearing did not concern romance, but rather was about a "supervisor telling [a subordinate] he wanted to have sex with her." ALJ Block found Smith's testimony that his comments were taken out of context instead of taking responsibility for them "suggest[ed] a higher likelihood of recurrence." Because this factual finding is supported by substantial evidence, we must defer to it. (*Fisher v. State Personnel Board* (2018) 25 Cal.App.5th 1, 23.) Substantial evidence thus supports the SPB's finding that Smith was likely to repeat his offending behavior, which in turn supports its decision to uphold Smith's dismissal. (*Skelly*, *supra*, 15 Cal.3d at p. 218.)

In any event, the "essential test" in deciding the appropriate employee penalty "is whether the conduct harms the public service." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 50.) So when assessing whether the SPB abused its discretion in imposing a certain penalty, "the overriding consideration . . . is the extent to which the

employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.' [Citations.]" (*Skelly*, *supra*, 15 Cal.3d at p. 218.)

The SPB has "broad discretion in determining . . . whether dismissal or suspension is the appropriate sanction." (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 343.) This is because "'a disciplinary discharge often involves complex facts and may require a sensitive evaluation of the nature and seriousness of the misconduct and whether it warrants the grave sanction of dismissal.' [Citation.]" (*Id*. at pp. 343-344.)

Although others may disagree with the SPB's decision that Smith's dismissal was appropriate—as ALJ Block did—the SPB abuses its discretion in fashioning a disciplinary penalty only when its decision "exceeds the bound[s] of reason." (*Ng v. State Personnel Bd.* (1977) 68 Cal.App.3d 600, 605.) Its decision did not do so.

As an ALJ, Smith was held to a "higher standard" than other state employees. (*Ackerman*, *supra*, 145 Cal.App.3d at p. 400.) He recognizes that he did not live up to that standard by exercising "poor judgment" during the Sandoval hearing. He also acknowledges that he violated several canons of the Code of Judicial Ethics by behaving in an undignified manner and making comments during the Sandoval hearing that objectified Lopez and could reasonably be understood as reflecting gender bias. Smith admits that his "deliberate and affirmative misconduct . . . violated his obligations as a judge and impaired the integrity of the proceedings before him." He also admits that his

11

comments "harmed the public service by discrediting [the Board] and himself" as an ALJ.

Given Smith's concessions and the "higher standard" applied to ALJs, "[w]e cannot say that, as a matter of law, [the SPB] erred" in finding that his dismissal was appropriate. (*Ackerman*, *supra*, 145 Cal.App.3d at p. 400; see also *Skelly*, *supra*, 15 Cal.3d at p. 218 ["overriding consideration" in deciding employee discipline is whether employee's conduct harmed the public service].) This is not an "exceptional case" where "reasonable minds cannot differ on the appropriate penalty." (*County of Los Angeles v. Civil Service Com. of County of Los Angeles* (2019) 40 Cal.App.5th 871, 877.) Because the SPB's decision to uphold Smith's dismissal was within its discretion, we affirm the judgment.

IV.

DISPOSITION

The judgment is affirmed. The SPB may recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.

12