Filed 11/27/13  Rosenberg v. Commission on Professional Competence CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EDWARD ROSENBERG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COMMISSION ON PROFESSIONAL COMPETENCE,<br><br>    Defendant;<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT,<br><br>    Real Party in Interest and Respondent. | D062238<br><br><br>(Super. Ct. No. 37-2011-00088743-CU-WM-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed.

Lawrence A. Mudgett III for Plaintiff and Appellant.

No appearance for Defendant.

Lawrence M. Schoenke and Andra M. Donovan for Real Party in Interest and Respondent.

Edward Rosenberg, a tenured teacher with the San Diego Unified School District (District), was placed on administrative leave following allegations of sexually inappropriate conduct involving a 16-year-old student. Following an administrative hearing before the District's Commission on Professional Competence (Commission), Rosenberg was dismissed. Rosenberg sought relief in the superior court and appeals that court's order denying his petition for writ of administrative mandate to compel the District to set aside the Commission's dismissal. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Rosenberg began teaching for the District in 2002 when he was assigned to Morse High School (Morse). Until January 2009, Rosenberg had no history of discipline and was a respected member of the Morse faculty. During the 2008-2009 school year, he was employed full time as an English teacher. On January 22, 2009, a 16-year-old student in Rosenberg's first period American literature class, M.C., told another teacher that the previous day Rosenberg had touched her inappropriately. The teacher, Katherine Banuelos, reported the incident to the school's administration and child protective services.

That afternoon, the school's campus police officer, Jarvis Gresham, interviewed M.C. and asked her to write down her account of what happened. M.C. told Gresham that during her first period class, she met with Rosenberg at his desk to discuss her grade. M.C. claimed Rosenberg asked her if she wanted to do something illegal with him to improve her failing grade and told her she would not have to do school work if she "entertained" him. When M.C. asked Rosenberg what he meant, Rosenberg told M.C.

2

she was a smart girl and could figure it out. M.C. also told Gresham that Rosenberg rubbed her leg during this meeting.

M.C. told Gresham that during her next class, taught by Banuelos, she told her close friend Beth S. what happened in Rosenberg's class. Beth and M.C. decided M.C. should go back to Rosenberg's classroom, which was next door to Banuelo's classroom, and tell him that she did not want to do anything sexual with him. Rosenberg's second period was his planning period. Beth told M.C. that if M.C. did not come back to class right away, she would come get her. M.C. asked Banuelos for permission to leave the class to go Rosenberg's room to get extra credit work and Banuelos allowed her to leave.

When M.C. arrived, Rosenberg was alone in his classroom. According to M.C., the blinds were down and the door was locked. She knocked on the door and Rosenberg let her in, then shut the door behind her. M.C. claimed that when she walked into the room, she told Rosenberg she "wasn't going to do anything nasty with him," but Rosenberg said it was too late to "do work" and he preferred she let him touch her. She said Rosenberg then rubbed her arm, put his arm on her waist, tried to put his hand down the front of her pants, grabbed her breast and buttocks, and breathed in her ear and made sexual noises. According to M.C., Rosenberg stopped touching her when he said, "I feel you are uncomfortable." M.C. then left the classroom and went back to Banuelos's class.

Gresham reported M.C.'s account of the events to his supervisor. The next day Detective Doris Devowe of the San Diego Police Department came to Morse to conduct further investigation. She interviewed Rosenberg, who told Devowe M.C. was a student in his first period class who was failing. Rosenberg said he had recently met with M.C.

3

to discuss what steps she could take to raise her grade. When Devowe told Rosenberg M.C. had alleged he engaged in inappropriate behavior, Rosenberg denied doing anything inappropriate and said he had no idea why M.C. would make allegations against him. Rosenberg told Devowe that when he met with M.C. during first period, she told him she did not think she could do the extra credit assignment Rosenberg had given to the class. Rosenberg told her she could come back during second period to discuss other ways she could raise her grade. Rosenberg said that when M.C. came back, he remembered going to the door and propping it open and also remembered the blinds were open.[1] He said during the meeting they discussed only M.C.'s grades and ways she could improve to pass his class. While he could not remember specifics of the work they discussed, he was certain it was the only topic of conversation.

Devowe also interviewed Beth, as well as another student, Patrick M., who also left Banuelos's classroom while M.C. was in Rosenberg's class. Beth told Devowe that a few minutes after M.C. left Banuelos's class, she left to check on M.C. under the pretense of getting a drink of water. Around the same time, Banuelos let Patrick leave to use the restroom. Beth told Devowe that the door to Rosenberg's classroom was closed and the blinds were partially closed but open enough that she could see in between the slats. When she looked in, Beth saw M.C. and Rosenberg standing very close to each other— "way too close for a teacher to be standing." She said she could not see what his hands

---

[1]     At the hearing before the Commission, Rosenberg testified he was not sure the door was open.

were doing, but saw he was leaning into her.  She watched for about a minute and then returned to class.

Patrick told Officer Devowe that when he was walking back from the restroom he saw Beth peering into the window of Rosenberg's classroom.  He had never had Rosenberg as a teacher and was friends with M.C. and Beth because they were in Banuelos's class with him.  He said he was not close with either girl, although they sometimes text messaged each other during class.  When Patrick saw Beth looking into the window, he became curious and peered in.  Beth told Patrick to go away, which made him more interested in what was going on.  Patrick told Devowe he could see into the classroom and witnessed Rosenberg standing very close to M.C., who was fiddling with a book on a nearby table.   Patrick described their positions as "hugging type close" and was certain that one of Rosenberg's hands was on M.C.'s buttocks.

Beth and Patrick both returned to Banuelos's classroom.  M.C. returned shortly thereafter.  When M.C. returned, Patrick sent her a text message asking what had happened.  M.C. responded that Rosenberg wanted her to have sex with him and touched her buttocks and put his hands under her shirt in return for a better grade.  Banuelos noticed the commotion when Patrick, Beth and M.C. returned to class and overheard Patrick say, "[Y]ou only got a C for that?"  At the end of the class another student approached Banuelos and said that M.C. had something she should tell Banuelos.

The following day, Banuelos pulled M.C. out of class and asked her what happened.  M.C. initially did not respond, but when Banuelos told M.C. she could be trusted, M.C. broke down in tears and told Banuelos that Rosenberg had touched her.

5

Banuelos asked M.C. to come back to her class at lunchtime. During this meeting, M.C. told Banuelos that Rosenberg had put his hand down her bra and tried to put his hand down her pants. M.C. also told Banuelos that Rosenberg said M.C. could raise her grade by making videos or dancing for him. After the meeting, Banuelos finished teaching her afternoon classes. She then reported what M.C. had told her to school officials.

Following Rosenberg's interview with Devowe, he was escorted from campus and placed on paid administrative leave. Rosenberg's classroom was searched by Morse principal Todd Irving. Five *Stuff*[2] magazines and several VHS videotapes were seized. One of the videotapes showed a student reading a sexually explicit poem in Rosenberg's class during the 2002-2003 school year. Thereafter, Rosenberg was placed on administrative leave and later arrested. He faced two criminal trials and both resulted in hung juries. The District moved to terminate Rosenberg under Education Code section 44932[3] on grounds of immoral conduct (§ 44932, subd. (a)(1)), evident unfitness for service (§ 44932, subd. (a)(5)), and persistent violation of the rules and regulations of the District (§ 44932, subd. (a)(7)). The District's charges primarily concerned M.C.'s accusations, but also included Rosenberg's possession of the seized magazines and videotape as sanctionable conduct.

---

[2]    *Stuff* is a magazine targeted towards young males. The magazines did not contain any nudity, but did contain photographs of young women in bikinis and underwear, as well as humor, trivia, and reviews of cars and tech products.

[3]    Statutory references are to the Education Code unless otherwise stated.

6

The District served Rosenberg with a detailed dismissal accusation and Rosenberg served the District with a notice of defense invoking his right to an administrative hearing. The hearing took place on January 5 and 6, 2011, before a Commission panel consisting of an administrative law judge appointed by the California Office of Administrative Hearings and two credentialed teachers, one selected by Rosenberg and one selected by the District. The first hearing day consisted of an opening statement by counsel for the District and the testimony of the District's witnesses: M.C., Beth, Patrick, Gresham and Devowe. The second day consisted of an opening statement by Rosenberg's counsel, closing arguments, and testimony by Rosenberg's witnesses: the principal at M.C.'s former high school, who testified about M.C.'s prior disciplinary and behavioral problems; two teachers who worked with Rosenberg at Morse and praised his work; and Rosenberg, who steadfastly denied all of the accusations against him relating to M.C.[4]

On February 4, 2011, the Commission issued its decision dismissing Rosenberg from permanent employment with the District. Based on what it deemed a preponderance of the evidence, the Commission found Rosenberg touched M.C.'s buttocks when they were alone in Rosenberg's classroom, that this conduct was immoral and that Rosenberg was unfit to serve as a high school teacher. In its decision, the

---

[4]    Rosenberg admitted having the *Stuff* magazines in his classroom and that it was inappropriate to keep them there, but maintained this conduct did not warrant dismissal. The charges related to possession of the videotape were dismissed because the video was taken more than four years before the notice of intent to dismiss was filed and because the "content was irrelevant."

Commission detailed the factual findings supporting its conclusion. It discredited much of M.C.'s testimony and concluded a preponderance of the evidence did not establish Rosenberg rubbed M.C.'s leg during their first period conference or that Rosenberg made inappropriate comments to M.C. during that meeting.

With respect to what occurred during Rosenberg's planning period, the Commission found Beth's testimony "was not particularly compelling." It noted she was unable to describe what she saw with specificity and her testimony demonstrated bias, finding that M.C.'s statements to Beth before the incident about what had occurred in first period "could have influenced [her] perception of what actually occurred inside the classroom." The Commission did find Patrick's testimony credible, stating he did not have a significant relationship with M.C. or Beth and did not know Rosenberg. The Commission found "[t]he degree of specificity [Patrick] provided concerning his observation was entirely appropriate to the circumstances" and he "did not exaggerate what he saw by claiming that he was able to see more than was actually visible through the partially closed binds." Further, the Commission found Patrick "was clearly shocked by what he observed" and that his spontaneous comment, "you only got a C for that," overheard by Banuelos, supported his testimony.

The Commission found Rosenberg engaged in "sexually provocative and exploitive conduct" that was offensive to M.C., Beth and Patrick and that betrayed the community's trust in teachers. Applying the factors set forth in *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 224-225, the Commission concluded Rosenberg was

8

unfit to teach based on this immoral conduct. The Commission found the District did not establish Rosenberg persistently violated or refused to obey school rules.

Rosenberg filed a petition for writ of mandate in the trial court under Code of Civil Procedure section 1094.5 seeking an order compelling the District to set aside the Commission's dismissal on the grounds the decision was not supported by substantial evidence. The District opposed the petition and also objected to certain evidence Rosenberg inserted into his briefing and lodged with the trial court that it contended was not part of the administrative record. After conducting an independent review of the administrative record, the trial court denied Rosenberg's petition. The court also sustained the District's evidentiary objections, finding the evidence was not part of the administrative record and Rosenberg failed to show the evidence was not available at the time of the administrative hearing.

## DISCUSSION

### I. *STANDARD OF REVIEW*

"Code of Civil Procedure section 1094.5 provides a trial court reviewing the decision of an administrative agency exercises its independent judgment in reviewing the evidence." (*San Diego Unified School Dist. v. Commission on Professional Competence* (2011) 194 Cal.App.4th 1454, 1461.) An abuse of discretion by the administrative agency "is established if the court determines that the findings are not supported by the weight of the evidence." (Code Civ. Proc., § 1094.5, subd. (c).) The trial court is "not bound by the findings of the Commission in exercising its independent judgment review [and is] free to make its own determination of the credibility of witnesses in the process."

9

(*Pittsburg Unified School Dist. v. Commission On Professional Competence* (1983) 146 Cal.App.3d 964, 977.)

After the trial court "'makes an independent judgment upon the record of an administrative proceeding, [the] scope of review on appeal is limited.' [Citation.] We must sustain the trial court's findings if they are supported by substantial evidence. [Citation.] In reviewing the evidence, we resolve all conflicts in favor of the party prevailing at the trial court level and must give that party the benefit of every reasonable inference in support of the judgment. "'When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court.'"'" (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 194 Cal.App.4th at p. 1461.) "We do not reweigh the evidence. Our inquiry 'begins and ends with the determination as to whether there is substantial evidence, contradicted or uncontradicted, which will support the finding of fact.'" (*Id.* at pp. 1461-1462.)

## II. *ANALYSIS*

### A

Rosenberg first argues the trial court failed to determine whether his employment by the District constituted a fundamental vested right, and, without supporting authority, contends this failure mandates reversal. We disagree. There is no requirement the trial court conduct a fundamental vested rights analysis to determine the applicable legal standard before its review of the Commission's decision. Under section 44945, the trial court is charged with conducting a de novo review of the evidence and independently

10

judging whether the Commission's findings were supported by the weight of that evidence. (See § 44945 ["The decision of the [Commission] may, on petition of either the governing board or the employee, be reviewed by a court of competent jurisdiction . . . . The court, on review, shall exercise its independent judgment on the evidence."]; *Governing Board v. Haar* (1994) 28 Cal.App.4th 369, 377 ["[I]ndependent review is legislatively mandated."].) As Rosenberg concedes, the trial court correctly "determined that its independent judgment should apply."

Rosenberg also argues the court espoused an independent review standard, but actually proceeded under a substantial evidence standard. In support of this claim, he cites the trial court's quotation in *Flaherty v. Board of Retirement of Los Angeles County Emp. Retirement Ass'n* (1961) 198 Cal.App.2d 397, 408: "'The rule in California is that upon review of the decision of a local administrative body, the reviewing court is concerned only with the presence or absence of substantial evidence.'" Rosenberg, however, has taken this statement out of context and excluded the portion of the quotation most pertinent to the trial court's ruling. The sentence continues: " . . . in the agency record which will support the agency's determination. The reviewing court may not consider evidence which was not presented to the local board . . . ." The paragraph in which the language is quoted concerns Rosenberg's improper reliance on evidence outside the administrative record; it does not concern the trial court's review of that record.

The court's order reflects that it understood its charge to "conduct an independent review of the evidence," including weighing the credibility of the witnesses. The court's

11

five-page decision contains a detailed analysis of the testimony of the various witnesses and their credibility to support its ultimate determination that the Commission did not abuse its discretion in finding cause to terminate Rosenberg. There was no error in the trial court's application of the standard of review.

B

Rosenberg next argues the trial court abused its discretion by improperly excluding admissible and relevant evidence. Specifically, he points to: (1) "two criminal trial jury verdicts whereby 22 of 24 jurors found ROSENBERG not guilty of touching the alleged victim"; (2) M.C.'s scholastic behavioral and academic reports; (3) photographs and video of Rosenberg's classroom; (4) portions of the criminal trial transcript; (5) and declarations from Rosenberg's former students praising him. Rosenberg contends this evidence was before the Commission and should have been considered by the trial court in its independent review of the administrative proceedings.

Rosenberg has not provided a sufficient record for this court to evaluate his contentions. A fundamental rule is that "it is the burden of the party challenging the order or judgment on appeal to provide an adequate record to assess error." (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 470.) Because the "'order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness'" (*ibid.*), where the "parties fail to [provide an adequate record], their claims must be resolved against them." (*Ibid.*)

Here, the trial court's order sustained the "District's objections to the second trial evidence and civil case, as well as exhibits 16-19." Rosenberg, however, failed to

12

provide this court with his amended petition or his notice of lodgment containing the evidence he now claims the trial court improperly excluded. Rosenberg also did not provide the District's statement of objections he argues was improperly sustained. Without the evidence or briefing in the trial court, we cannot determine what the order excluded and whether that exclusion was proper. Therefore, the court properly sustained the District's motion to strike.

C

Finally, Rosenberg argues substantial evidence did not support the trial court's affirmance of the Commission's finding that Rosenberg's conduct was immoral and warranted dismissal. Specifically, Rosenberg contends the trial court erred in relying on Patrick's testimony because it contained inconsistencies and he was influenced by M.C. and Beth. We reject these arguments.

As discussed, once the trial court "'makes an independent judgment upon the record of an administrative proceeding, [the] scope of review on appeal is limited.'" (*San Diego Unified School Dist. v. Commission on Professional Competence*, *supra*, 194 Cal.App.4th at p. 1461.) "We must sustain the trial court's findings if they are supported by substantial evidence" (*ibid.*) and in our review of the evidence we must "resolve all conflicts in favor of the party prevailing at the trial court level." (*Ibid.*) "We do not reweigh the evidence. Our inquiry 'begins and ends with the determination as to whether there is substantial evidence, contradicted or uncontradicted, which will support the finding of fact.'" (*Id.* at pp. 1461-1462.)

13

The trial court found the Commission properly discredited M.C.'s and Beth's accounts of the event, but that Patrick's account was credible. Rosenberg contends it was error for the court to credit Patrick's testimony because of inconsistencies between his statement to Devowe, his testimony in Rosenberg's criminal trials[5] and his testimony before the commission. Specifically, Rosenberg points to Patrick's statement in the criminal trial that M.C.'s back was toward the classroom door, and Patrick's inconsistent statements at different times at the administrative hearing that M.C.'s back was toward the door and that her back was toward Patrick, not the door.

This minor inconsistency in Patrick's testimony does not support reversal. It did not make the trial court's finding against him implausible or unreasonable. (*Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 699 ["'Where two or more inferences reasonably can be drawn from the facts, an appellate court is without power to substitute its deductions for those of the trial court.'"].) The trial court found that although there were slight changes in Patrick's testimony over time, he "was consistent in what he saw and what he related under oath." The significant information from Patrick's testimony—"that [Patrick] saw a hand on M.C.'s behind and that this was Mr. Rosenberg's hand"—was consistent over time and was sufficient evidence to support the trial court's order upholding the Commission's decision.

---

5       Rosenberg lodged in this court testimony from one of the criminal trials, which included Patrick's testimony. The District did not raise any objection to Rosenberg lodging the transcript and it is unclear from the record whether this testimony was before the trial court or was part of the evidence it excluded.

14

With respect to Patrick's autonomy, Rosenberg argues Patrick was entirely dependent on Beth and M.C. because Patrick testified he could not see M.C.'s face when he looked into Rosenberg's classroom. Rosenberg, however, does not dispute he was alone in his classroom with M.C. at the time Patrick and Beth peered into the window. Rosenberg also contends Patrick was "influenced by his girlfriends when they gossiped and texted about the incident in their next class together." The record contradicts this claim. In his initial interview with Devowe, Patrick stated he was friends with M.C., "but not a close friend." Patrick explained "[t]hey sometimes text message during their class together but she is not in his normal group of friends and they have never hung out together outside their classroom." This evidence does not support reversal of the trial court's finding that Patrick's testimony was credible. In sum, substantial evidence supported the trial court's finding that Rosenberg engaged in "sexually provocative and exploitive conduct."

## DISPOSITION

The order is affirmed. Each party to bear its own costs.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

15